**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert E. DEUTSCH and Alan Brooks,
Defendants-Appellants.**

No. 72–1779.

United States Court of Appeals,
Fifth Circuit.

Argued Feb. 5, 1973.

Decided March 9, 1973.

Charles E. Wood, J. C. Rary, Atlanta, Ga., Court-appointed, C. Ronald Ellington, Court-appointed, and Roger Groot, Professors of Law, University of Georgia, Wayne McCormack, Athens, Ga., for defendants-appellants.

John W. Stokes, Jr., U. S. Atty., George H. Connell, Jr., Gale McKenzie, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before ALDRICH*, SIMPSON and CLARK, Circuit Judges.

ALDRICH, Circuit Judge:

Defendants Brooks and Deutsch were jointly indicted in two counts for violation of 18 U.S.C. § 201(b)(3): count one for, during the period between November 16 and December 8, 1970, offering to pay a postal employee the sum of $50. for each credit card he should abstract from the mail and deliver, and count two, for giving a postal employee $50. "with intent to induce [him] to do an act in violation of his lawful duty." Defendants were found guilty by a jury on both counts and given concurrent sentences. They appeal.

To some extent the evidence was in sharp dispute. The postal employee, one Morrison, testified that on November 16, 1970 Brooks, in the company of Deutsch, went up to him while his delivery truck was parked on a country road having his "break" and offered to buy all the credit cards he could get for $50. apiece. Brooks testified he approached Morrison because he was smoking, and had long hair, and he thought he might sell him some marihuana. Subsequent encounters occurred, with no transactions taking place, and ultimately. on December 7, Brooks (who was always accompanied by Deutsch) gave Morrison $50. Morrison testified it was paid with the statement that it was "to prove we mean business." Brooks, on the other hand, testified it was merely a loan out of kindness because Morrison was having trouble paying doctors' bills. The next day, pursuant, according to Morrison, to prearrangement, the parties met again, Morrison with two credit cards in his pocket, obtained from his superiors. The government agents, who Morrison's superiors had arranged for, jumped the gun and arrested Brooks and Deutsch before any transaction had taken place. Brooks was found to have exactly $100. on his person.

■ Defendants' first complaint is that the indictments are duplicitous. We do not agree. This is not a case where the two offenses merged, as in Prince v. United States, 1957, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (unlawful entry into bank, and robbery of bank); Milanovich v. United States, 1961, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (stealing and receiving the same property). If defendants had purchased cards on two separate days, there would have been separate offenses. Here defendants performed different acts, on different days, each a separate offense. The offer on November 16 was a completed offense. United States v. Jacobs, 2 Cir., 1970, 431

---

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

F.2d 754. Three weeks later, when nothing had materialized, defendants made a payment as earnest money. This was a new matter. *Cf.* United States v. Barnes, 9 Cir., 1970, 431 F.2d 878.

■ Defendant Deutsch asserts that he committed no offense. The mere fact that he was present on every occasion, and standing sufficiently close to hear all the conversations, would not have been enough. However, his providing the transportation facilitated the events. Furthermore, Morrison was not shaken with respect to his testimony that Brooks said the payment was to show that "we" mean business. Under all the circumstances, although the question may be close we believe the jury could conclude that the plural was accurate, and that Deutsch attended for a purpose. See, in general, United States v. Garguilo, 2 Cir., 1962, 310 F.2d 249; United States v. Bickford, 1 Cir., 1971, 445 F.2d 829, cert. denied 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262. Nor, while we are on the subject of Deutsch, do we see any prejudicial error in the charge.

■ Brooks presents an esoteric argument on entrapment which we cannot agree with. It hinges around the claim that Morrison, by asserting that he had a sick wife, induced Brooks to transfer the money. The difficulty with this argument is that, unlike the drug cases that defendant cites, the transfer of funds was not unlawful in itself. If it was a simple loan, as Brooks contends, there was no offense, entrapped or otherwise.[1] If it was a payment in connection with the purchase of cards, there was no entrapment. Brooks does not claim that he was induced to purchase cards in order to help Morrison meet his bills, or to make a loan with the objective.

Whatever question such a set of facts would have presented is not before us.

We are, however, troubled by one matter. Before trial defendants moved for the production of Morrison's personnel file, for "insight into the character of said prospective witness," citing Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. The U. S. Attorney responded, "This office does not have the personnel file of D. F. Morrison." The court ruled, "[T]he prosecution cannot be compelled to disclose something which it does not have. Furthermore, the Post Office Department does not appear to be an arm of the prosecution as contemplated by *Brady*."

■ We find no reference in *Brady* to an arm of the prosecution. It was a Post Office employee who had been sought to be bribed. The government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting a government employee in the Post Office and use him as its principal witness, but deny having access to the Post Office files. In fact it did not even deny access, but only present possession without even an attempt to remedy the deficiency. *Cf.* Barber v. Page, 1968, 390 U.S. 719, 723–724, 88 S.Ct. 1318, 20 L.Ed.2d 255. We do not suggest by citing *Barber* that the government was obliged to obtain evidence from third parties, but there is no suggestion in *Brady* that different "arms" of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities.[2] And, of course, the *Brady* rule requires the government to supply evidence useful to the defendant simply for impeachment purposes. Giglio v. United States, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed. 2d 104.

---

1. We are, of course, not concerned with loans made to an official who had governmental duties towards the lender.

2. Nor are we impressed by the government's argument that having been denied Rule 16 production, defendant was at fault for not seeking a subpoena duces tecum—for which it relies on a case which did not even consider the question because the record showed that the defendant in fact had the information. (United States v. Smith, 6 Cir. 1968, 399 F.2d 896). One, improperly court-rejected, demand is enough.

58

The government argues that defendant has "failed to show that the records which he sought to inspect contained anything favorable to him." This is true, but it is not the answer to *Brady*. The burden is on the government to produce, not on the defendant. The statement is doubly ingenuous as, again, the government stops here—it does not assert the lack of favorable evidence in the record. But if there is any burden on the defendants of suggesting a possibility of favorable evidence we note the evasive testimony of Morrison at the trial.

Q. Have you ever had any problems with the Supervisor?

A. No, sir.

Q. About your appearance, or anything?

A. Personal appearance where they thought my hair may be too long. It was unjustified.

Q. Justified?

A. Unjustified. I had been down to see Mr. Camp. He said there was nothing wrong with it.

We could not say there were in fact "problems" on this somewhat self-contradictory testimony, particularly problems of a serious nature, but they were certainly not negatived. Morrison was the government's whole case. While we do not think Brooks' testimony very credible, the defendants were entitled to try.

The question comes, what next? Defendants are not entitled to a new trial unless they were in fact deprived of something of value. We remand the case to the district court for examination of the personnel file to determine if it would have afforded useful cross-examination. If not, the judgments stand; otherwise the convictions are to be vacated and a new trial ordered. *Cf.* Campbell v. United States, 1961, 365 U.S. 85, 98–99, 81 S.Ct. 421, 5 L.Ed.2d 428; United States v. Hand, 5 Cir., 1973, 472 F.2d 162. If the district court finds against the defendants, but there is a desire on their part to appeal, the court should vacate the judgment of conviction and re-enter it. *Campbell*, ante; Kolod v. United States, 1968, 390 U.S. 136, 138, 88 S.Ct. 752, 19 L.Ed.2d 962.