UNITED STATES of America,
Plaintiff-Appellee,

v.

Samuel E. MUSE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony R. WEST, Defendant-Appellant.

Nos. 81–2436, 81–2523.

United States Court of Appeals,
Tenth Circuit.

May 17, 1983.

Vernon E. Lewis, Asst. U.S. Atty., and Jim J. Marquez, U.S. Atty., Kansas City, Kan., with him on brief, for plaintiff-appellee.

David J. Phillips, Asst. Federal Public Defender, and Charles D. Anderson, Federal Public Defender, Ira R. Kirkendoll, Asst. Federal Public Defender, and Robert M.

Isenberger, Kansas City, Kan., with him on brief, for defendants-appellants.

Before DOYLE and McKAY, Circuit Judges, and BROWN *, Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

These appeals were taken by defendants after their joint trial and conviction by a jury of one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendants submitted a joint brief, raising three issues. The facts shown by the evidence at trial are not in dispute.

The first issue raised by defendants is whether they were denied a fair trial by the government's failure to produce the confidential informant for interview by defense counsel. On September 28, 1981, the trial court granted defendant's pre-trial motion for disclosure of the identity of the confidential informant. In its order, the court stated that the government was to disclose the identity of the informant one week prior to trial and was to make the informant available to the defendants the morning of trial. Before trial commenced on October 28, 1981, the government announced to the court that the confidential informant was Michael Scheetz, and that it was unable to produce him for interview by defendant counsel. Mr. Scheetz had been in the witness protection program, but the Assistant United States Attorney learned approximately two weeks before trial that Scheetz had been released from that program. The prosecutor explained that Scheetz had been maintaining contact with the Drug Enforcement Administration, that he had spoken with Scheetz the previous Friday, October 23, 1981, and that Scheetz at that time had indicated his willingness to appear at trial. Scheetz also said he was going to Las Vegas, and would check with the United States Marshal's office there for a subpoena. The prosecutor had the Marshal's Service serve a subpoena in Kansas City, which was sent by Telex to the Marshal's office in Las Vegas.

On Monday, October 26, 1981, the prosecutor learned that Scheetz had not gone to Las Vegas, but rather had returned to Scranton, Pennsylvania, where he supposedly could be contacted. The prosecutor telephoned the Marshal's Service in Scranton several times the next day, October 27, 1981, and was informed that they had been in contact with Scheetz. Scheetz apparently gave a pay phone as the number where he could be reached, but had left that location when the prosecutor attempted to call him at that number. The Marshal's Service was never able to serve Scheetz with the subpoena, which remained outstanding, despite efforts to locate Scheetz until approximately 9:00 p.m. the night before trial.

■ We start with the principle that the government's refusal to disclose the identity of a confidential informant may violate a defendant's due process rights. *Gaines v. Hess,* 662 F.2d 1364 (10 Cir.1981). Of course, the question before us is not disclosure, because the identity of the informant was disclosed. Instead, the first aspect of this issue to be resolved is whether defendants were denied due process by the failure of the government to produce the informant for interview, as ordered by the trial court. The government must use reasonable efforts to produce an informant so that a defendant may interview him or use him as a witness, but it is not the guarantor of an informant's presence at trial. *United States v. Hart,* 546 F.2d 798 (9 Cir.1976), en banc, cert. denied, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977); *United States v. Hayes,* 477 F.2d 868 (10 Cir.1973).

■ It is clear from the trial court's ruling that it accepted the government's statements as to its efforts to locate and produce the informant, and found them reasonable. We agree with this assessment. As the majority of the en banc Court held in *Hart,* supra, there was no reason to anticipate or

---

* Hon. Wesley E. Brown, Senior District Judge for the District of Kansas, is sitting by designa- tion.

suspect that the informant would fail to appear. Until Scheetz failed to go to Las Vegas as he said he would, he had maintained contact with the Drug Enforcement Administration [DEA] and had told the Assistant United States Attorney that he would be present at trial.[1] On Monday, October 26, 1981, after the Assistant United States Attorney discovered Scheetz had not been served with a subpoena in Las Vegas, he actively tried to locate Scheetz in the less than two days remaining before trial. The Marshal's Service, however, was simply unable to find Scheetz. Under the circumstances recited above, we conclude that the government used reasonable efforts to produce Scheetz as soon as it knew that his appearance was doubtful or problematic, which is all that is required of it.

■ The second aspect of the failure to produce Scheetz is whether the trial court erred in denying the defense motion for a continuance until Scheetz could be located and interviewed. It has been held without additional justification that where the government has made a reasonable effort to locate and produce the informant, the trial court does not abuse its discretion in denying a continuance. *United States v. Gonzalez,* 582 F.2d 991 (5 Cir.1978); *Hart,* supra. Thus, neither *Gonzalez* nor *Hart* treated denial of a continuance as a separate question. Even if it is considered as one, we hold there was no error in denying a continuance here. Where the government has been unsuccessful in locating the informant despite its reasonable efforts, there is nothing more to be achieved by a continuance unless there is some reasonable possibility that the defendants could find the informant themselves. Here as in *Gonzalez,* there was no reason to believe that defendants could find the informant in the foreseeable future.

■ A second issue asserted by defendants is that the trial court erred in refusing to give defendant Muse's requested instruction on his theory of defense.[2] The jury was instructed that defendants' "not guilty" pleas put in issue every material ingredient of the crime charged, and made it incumbent upon the United States to establish by the evidence, to the jury's satisfaction beyond a reasonable doubt, every material allegation of the offense charged. This is in substance, of course, the first paragraph of defendant's request. The instruction as to elements of the offense was:

"You are instructed that the elements of the offense charged in the indictment are as follows:

First: That on or about February 17, 1981, in the District of Kansas, the defendants did distribute the controlled substance described;

Second: That said substance was cocaine;

Third: That the acts of said defendants were done knowingly and intentionally."

The trial court found that the requested instruction set out in Footnote 2 was adequately covered by other instructions given, and we agree. The requested instruction, particularly the last three numbered para-

---

1. It does not appear that Scheetz was trying to avoid the subpoena even when he went to Scranton instead of Las Vegas, since he contacted the Marshal's Service to leave a telephone number in Scranton.

2. The instruction requested by defendant Muse was as follows:

"Defendant Muse has pleaded 'not guilty' to the charge contained in the indictment. This plea puts in issue each of the essential elements of the offense as described in these instructions, and imposes on the government the burden of establishing each of these elements by proof beyond reasonable doubt.

Defendant Sam Muse's theory of defense is:

(1) That Defendant Muse has not been identified beyond a reasonable doubt as being present on February 17, 1981, in Kansas City, Kansas at the scene of the alleged transaction;

(2) That it has not been established beyond a reasonable doubt that Defendant Muse possessed cocaine;

(3) That it has not been established beyond a reasonable doubt that Defendant Muse knowingly and intentionally distributed cocaine;

(4) That it has not been established beyond a reasonable doubt that the substance in question on February 17, 1981 was illegal cocaine."

graphs, was merely a statement of the essential elements in the negative. Thus, it was repetitious of the instruction stating the effect of the "not guilty" plea. The first numbered paragraph, embodying the defense of mistaken identity, was likewise unnecessary. It is obvious that the court's instructions required the jury to find beyond a reasonable doubt that the defendants, not some other person, committed the offense. The trial court's refusal to give defendant Muse's instruction in the form he requested did not deprive either defendant of a fair trial.

The final issue presented by these appeals concerns the government's failure to provide certain material which the defendants contend was discoverable. Defendants' first complaint in this regard is a failure by the government to supply an updated or current "rap sheet" for the informant Scheetz. As defendants recognize in their brief, this matter is rendered moot by the fact that Scheetz did not testify at trial, and was therefore not subject to cross-examination or impeachment.

█ In the other related assignment of error, defendants contend that the trial court erred in denying defendant Muse's motion for "access to the government personnel files of government agents David Cigich, Edward King, F.B.I. forensic chemist Ronald J. Wagenhofer" and others. Defendants cite *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) as support for their contention that they were entitled to inspect government employees' personnel files. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment..." 373 U.S. at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218. In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), one Assistant United States Attorney stated in a post-conviction affidavit that he had promised the co-conspirator he would not be prosecuted if he testified for the government against the defendant. This newly discovered evidence, presented in support of

Giglio's motion for new trial, was contrary to statements by the Assistant United States Attorney who tried the case, and the co-conspirator's trial testimony. The Supreme Court found that the co-conspirator's "credibility as a witness was ... an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." *Giglio,* supra, 405 U.S. at 155, 92 S.Ct. at 766, 31 L.Ed.2d at 109. As a result, it was held in that case that due process required a new trial.

The Fifth Circuit had occasion to apply *Brady* and *Giglio,* supra, in *United States v. Deutsch,* 475 F.2d 55 (5 Cir.1973), a bribery case involving a defendant's right to review the personnel file of the government employee who testified against him. In *Deutsch,* defendants moved for production of postal employee Morrison's personnel file, for " 'insight into the character of said prospective witness.' " 475 F.2d at 57. The government sought to avoid production claiming that the Post Office was not an "arm of the prosecution" and that the United States Attorney's office did not have Morrison's personnel file. The *Deutsch* Court held that where Morrison was the "government's whole case," *Brady* required the government to produce his personnel file if it contained evidence useful to defendants for impeachment purposes, regardless of the fact that Morrison was employed by a different "arm" of the government. *Deutsch* recognized that a new trial was required only if defendants were deprived of something of value, and so remanded the case to the district court for examination of the personnel file to determine whether it would have afforded useful cross-examination.

We agree with the statement in *Deutsch* that the government must supply evidence useful to the defendant simply for impeachment purposes. However, in contrast to *Deutsch,* we hold that a remand is not necessary on the facts presented here. Unlike this case, *Deutsch* apparently involved a single request for production of the person-

nel file in question. In the instant case, defendant Muse made three specific requests and one general request for disclosure of evidence useful for impeachment, all of which were granted by the trial court. These asked for disclosure of: (1) all prior felony convictions and juvenile adjudications of any government witness; (2) all considerations, promises, and beneficial treatment given to government witnesses or government employees in connection with the prosecution; (3) all evidence showing "bad acts" of government witnesses; and (4) any and all other materials which would be favorable to the accused or discrediting to the government's case. The government contends that the further request for access to personnel files, the only discovery denied by the trial court, was "a fishing expedition." Whether it was that or not, the section of defendant Muse's motion requesting personnel files was certainly overly broad and in our view superfluous, considering the granted portions of Muse's motion. Defendants do not claim that the government failed to produce any materials pursuant to the requests summarized above. We think these requests, granted by the trial court, were quite thorough in seeking "evidence useful to the defendant(s) simply for impeachment purposes," *Deutsch*, 475 F.2d at 57, whether such evidence was contained in personnel files or elsewhere. It is to be kept in mind that it was such evidence defendants were entitled to, not the personnel files as such. The trial court's refusal to order production of the personnel files was not error, because the court did in fact order production of all material favorable or useful to the defense.

We find no error, and the judgments appealed from are therefore AFFIRMED.