**Toby Joe GUTIERREZ,
Petitioner–Appellant,**

v.

**Dan MORIARTY, Warden, Attorney
General of the State of New
Mexico, Respondents–Appellees.**

No. 88–1849.

United States Court of Appeals,
Tenth Circuit.

Jan. 7, 1991.

Ann Steinmetz, Asst. Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

Hal Stratton, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, N.M., for respondents-appellees.

Before MCKAY, SEYMOUR and ANDERSON, Circuit Judges.

SEYMOUR, Circuit Judge.

Toby Joe Gutierrez brought this habeas corpus action pursuant to 28 U.S.C. § 2254 (1988) challenging the constitutionality of his conviction and sentence under New Mexico law for heroin trafficking. A federal magistrate denied Gutierrez' motion for an evidentiary hearing and issued proposed findings recommending that relief be denied. The district court adopted the recommendation and Gutierrez appeals. Gutierrez contends that: (1) the State's failure to produce his co-defendant and a confidential informant denied his due process right to a fair trial; (2) the district court erred in failing to hold an evidentiary hearing on his claims arising from preindictment and pretrial delay; (3) the court erred in failing to hold an evidentiary hearing on his claim of ineffective assistance of counsel arising from counsel's failure to raise preindictment and pretrial delay; and (4) his life sentence constitutes cruel and unusual punishment. We affirm.

I.

On July 12, 1979, Gutierrez and co-defendant Ruth Maestas were indicted on two counts of heroin trafficking that had allegedly occurred in March. A bench warrant for their arrest was also issued on July 12, although Gutierrez was not arrested until February 14, 1980. Maestas was never apprehended and the case against her was ultimately dropped. Gutierrez' public defender entered an appearance on February 25 and moved the court on March 14 for an order requiring the State to identify and produce the confidential informant who had taken part in the transactions underlying the indictment. Although the court granted the motion on April 7, the State did not respond until May 28 at which time the State named Leonard Alvarez as the informant but stated that Alvarez' whereabouts were unknown.

A trial date of June 16, 1980, was extended upon Gutierrez' motion, and his trial commenced on August 21. Although Gutierrez' counsel pointed out to the court on the day of trial that the State had never produced Alvarez, no motion objecting to that failure is in the record on appeal. Alvarez and Maestas did not appear at trial, and the State established its case against Gutierrez through the testimony of Solomon Luna, a narcotics agent with the New Mexico State Police, who worked undercover with the confidential informant he identified as Leonard Alvarez. According to Luna, he and Alvarez went to Maestas' home to set up a heroin deal. Maestas left the home to obtain the heroin and returned followed by three men, one of whom Luna identified as Gutierrez. Two sales of heroin occurred, in one of which Gutierrez allegedly provided the heroin. The court directed an acquittal on one count, and a jury convicted Gutierrez on the remaining count involving the deal in which the man Luna identified as Gutierrez had actually handed over the drug in Luna's presence.

Gutierrez was found to be a second offender under the state heroin trafficking statute and sentenced to life in prison. Gutierrez appealed, raising the State's failure to produce the informant and his attorney's failure to file motions attacking the preindictment and pretrial delay. The New Mexico Supreme Court remanded for reconsideration of the sentence. In so doing, the Court did not address the informant issue and stated with respect to preindictment and pretrial delay that "appellant's failure to raise the 'speedy trial' issue at the trial level and present a proper quantum of proof on the issue was a failure to preserve the issue for appellate review. *See State v. Elliott*, 89 N.M. 756, 557 P.2d 1105 (1977)." Rec., vol. I, doc. 9, exh. D at 2. Upon resentencing, Gutierrez was again given a life term. After filing an unsuccessful pe-

tition for state post-conviction relief, Gutierrez brought the present action.[1]

## II.

Gutierrez asserts that the State's failure to produce the informant Alvarez or reveal his whereabouts deprived Gutierrez of his right to due process. It is clear that a defendant may be "denied due process by the failure of the government to produce the informant for interview, as ordered by the trial court." *United States v. Muse*, 708 F.2d 513, 514 (10th Cir.1983). Although "[t]he Government must use reasonable efforts to produce an informant so that a defendant may interview him or use him as a witness, ... it is not the guarantor of an informant's presence at trial." *Id.*

In denying Gutierrez relief on this ground, the district court relied entirely on *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), which requires that a defendant "at least make some plausible showing of how [the missing witness'] testimony would have been both material and favorable to his defense." *Id.* at 867, 102 S.Ct. at 3446. On appeal Gutierrez argues that *Valenzuela–Bernal* is factually distinguishable and that the lower court erred in applying the standard articulated in that case rather than what Gutierrez perceives to be the less demanding standard set out in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

The Court in *Roviaro* considered a situation in which the government had not identified or produced an informant who "was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that [the informant] denied knowing [the accused] or ever having seen him before." *Id.* at 64–65, 77 S.Ct. at 630. Under these circumstances, the Court held that withholding disclosure was prejudicial error because the informant's "possi-

ble testimony was highly relevant and might have been helpful to the defense." *Id.* at 63–64, 77 S.Ct. at 629.

In *Valenzuela–Bernal*, the defendant, who was charged with bringing an illegal alien into the United States, was arrested along with three illegal aliens as they crossed a border checkpoint. The government detained one of the three to provide a basis for the charge against the defendant, while the other two were deported before they were interviewed by the defendant upon the government's determination that they possessed no evidence material to the defense. In finding no prejudicial error arising from the deportation, the Court concluded that the defendant had to offer "a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." 458 U.S. at 873, 102 S.Ct. at 3449. Significantly, the Court observed that the defendant "was present throughout the commission of the crime," and that he was therefore in a position to offer a plausible explanation of the aid he would have received from the testimony of the missing witnesses. *Id.* at 871 & n. 8, 102 S.Ct. at 3448 & n. 8.

We see no conflict in the standards the Court applied in the two cases discussed above. As stated by the Court in *Roviaro* and as applied in *Valenzuela–Bernal*, assessment of whether nondisclosure or nonproduction of a witness is erroneous "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62, 77 S.Ct. at 629. The adequacy of the showing of materiality is thus a product of these relevant factors in a particular case.

■ Here, as distinguished from *Roviaro*, the informant was not the only person other than the accused present at the scene of the crime. Unlike the situation in *Va-*

---

1. The district court held that Gutierrez had exhausted his state remedies as required by 28 U.S.C. § 2254, and the State does not challenge this holding on appeal.

*lenzuela–Bernal,* Gutierrez' defense was that he was not present when the crime was committed and was misidentified by the State's witness. Although the question is a close one, we conclude that Gutierrez has failed to establish a constitutional violation arising from the State's failure to produce the informant. Gutierrez claims that because he was not present at the commission of the crime, he cannot do more than state that the missing informant, if he testified truthfully, would corroborate Gutierrez' story. Under some circumstances, this claim alone might constitute a plausible showing of how the informant's testimony would have been sufficiently "relevant and helpful to the defense, or . . . essential to a fair determination of a cause" to require the government to produce the informant. *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 628. The state trial court here obviously thought that Gutierrez should have had access to the informant because it ordered the State to reveal the informant's whereabouts. When the State did not do so, however, Gutierrez did not file any motion in the trial court. Moreover, although Gutierrez' defense was that he was not at the scene of the crime and was misidentified by Luna, Gutierrez did not respond to the State's demand for notice of an intent to present an alibi defense. Finally, at least three other people were present at the scene of the crime, including co-defendant Maestas whom Gutierrez knew. The record, however, contains no evidence that Gutierrez attempted to interview or subpoena Maestas, or to ascertain the identity of the other witnesses and support his defense through their testimony. Thus, even assuming that the state trial court was correct in ordering the informant disclosed and that the State therefore had a duty to exercise due diligence in producing him, under the circumstances of this case its alleged failure to do so did not deprive Gutierrez of his right to a fair trial. *See, e.g., United States v. Giry,* 818 F.2d 120, 130–31 (1st Cir.1987). Applying the same analysis, we conclude that Gutierrez likewise suffered no constitutional deprivation arising from the absence of his co-defendant.

## III.

Gutierrez contends that the district court erred in refusing to hold an evidentiary hearing on his claims asserting constitutional violations arising from preindictment and pretrial delay. The court concluded that the state supreme court had expressly invoked its procedural bar based on Gutierrez' failure to raise these issues properly in state district court. The district court rejected Gutierrez' argument that federal habeas review is nonetheless available because New Mexico has a fundamental error exception to its procedural bar analogous to the Oklahoma exception recognized by the Supreme Court in *Ake v. Oklahoma,* 470 U.S. 68, 74–75, 105 S.Ct. 1087, 1091–92, 84 L.Ed.2d 53 (1985). Accordingly, the court applied the cause and prejudice standard mandated by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), when a habeas petitioner seeks federal review of a defaulted claim. On appeal, Gutierrez reiterates his argument that New Mexico has a fundamental error exception to its procedural bar analogous to that described in *Ake,* and also argues that the New Mexico Supreme Court actually considered the merits of the claim in any event.

As quoted above, the New Mexico Supreme Court rejected the preindictment and pretrial delay claims by stating that the failure to raise the issue "at the trial level and present a proper quantum of proof on the issue was a failure to preserve the issue for appellate review," citing *State v. Elliott,* 89 N.M. 756, 557 P.2d 1105 (1977). *See* rec., vol. I, doc. 9, exh. D at 2. Gutierrez argues that in so stating the state court considered the merits of the claims, pointing to the court's reference to a "proper quantum of proof" and to the court's citation to *Elliott,* a case in which the court reviewed the merits of a defaulted claim.

■ The Supreme Court has held that federal habeas review of a defaulted claim is not precluded unless the state court opinion contains a plain statement clearly and expressly relying on its procedural bar. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct.

1038, 1043, 103 L.Ed.2d 308 (1989). State court opinions that contain ambiguous references to state law do not constitute a plain statement within the meaning of *Harris. See id.,* 109 S.Ct. at 1042–43. We need not determine here whether the New Mexico Supreme Court clearly, explicitly, and unambiguously relied on its procedural bar rule. Even if the Court did so, we hold that federal review is nonetheless available because the bar, as applied in New Mexico to the claims at issue, does not constitute an adequate state ground precluding consideration on habeas.

■ Federal habeas review of a defaulted federal claim is precluded when the state court has disposed of the claim on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris,* 109 S.Ct. at 1042–43. A state procedural default ruling is not independent if application of the bar depends on an antecedent ruling on the merits of the federal claim. *See Ake,* 470 U.S. at 74–75, 105 S.Ct. at 1091–92. A state's application of the bar is not adequate unless it is " 'strictly or regularly followed.' " *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988) (citation omitted) (quoting *Hathorn v. Lovorn,* 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982)).

### A.

■ In assessing whether New Mexico's procedural bar is an independent state law ground, we begin by pointing out that New Mexico draws a clear distinction between fundamental rights and fundamental errors when determining the applicability of its bar. *See, e.g., State v. Isiah,* 109 N.M. 21, 781 P.2d 293, 297 (1989); *State v. Clark,* 108 N.M. 288, 772 P.2d 322, 330–32, *cert. denied, Clark v. New Mexico,* — U.S. ——, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989); *State v. Escamilla,* 107 N.M. 510, 760 P.2d 1276, 1281–82 (1988). As these cases set out, under New Mexico law a defaulted claim of denial of a fundamental *right* (or federal constitutional right) is subject to waiver; the court may exercise its discretion whether to hear the merits. On the other hand, the New Mexico courts do not permit waiver of fundamental *error,* which the courts define narrowly. *See, e.g., Isiah,* 781 P.2d at 297 (fundamental error if innocence indisputable or guilt so doubtful as to shock the conscience); *Clark,* 772 P.2d at 331 (fundamental error if miscarriage of justice); *State v. Lujan,* 103 N.M. 667, 712 P.2d 13, 19 (Ct.App.1985) (fundamental error if denial of due process of law), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986). Review of a defaulted fundamental-right claim is therefore only mandatory when denial of the right gives rise to a question of fundamental error as defined by state law.

■ Thus, unlike Oklahoma, New Mexico does not equate fundamental error with federal constitutional error. *See Ake,* 470 U.S. at 75, 105 S.Ct. at 1092. In New Mexico, unlike Oklahoma, a state court's unambiguous statement that a federal constitutional claim is waived does not necessarily mean that the court considered the merits of the claim. Rather, the court could have considered the alleged denial on the merits and found no resulting fundamental error, as defined by state law. Or, the court could instead have merely *assumed* the existence of a violation of a fundamental right and found no resulting fundamental error. Or, the court could have done neither of the above, but instead found no fundamental error due to overwhelming evidence of guilt, and then exercised its discretion not to review the defaulted fundamental-right claim. *See, e.g., Isiah,* 781 P.2d at 297. In sum, a state court in New Mexico may invoke the procedural bar without the necessity of ruling on the federal constitutional claim. As a general rule, therefore, application of New Mexico's procedural bar rule constitutes an independent state ground because it does *not require* a ruling on the merits of the federal claim.

### B.

■ Nonetheless, the rule is not "adequate" under *Harris* and its predecessor cases because New Mexico does not follow

its procedural bar rule strictly or regularly when dealing with defaulted claims of preindictment or pretrial delay. As an initial matter, we point out that although the New Mexico courts have often stated that the general rule in that state "does not permit review of a question not properly preserved below," *Escamilla,* 760 P.2d at 1281, the courts have also often stated that they "may exercise *discretion* to consider fundamental rights that may have been infringed without preservation of error." *Id.* at 1282 (emphasis added); *see Clark,* 772 P.2d at 330 (review of a defaulted fundamental-right claim is discretionary). Our research has discovered no case articulating the parameters within which the New Mexico courts exercise this discretion, and it appears that there are no standards governing those courts' discretionary review of cases raising defaulted fundamental constitutional rights absent fundamental error. When assessing the adequacy of the New Mexico procedural bar rule, we must therefore recognize that the New Mexico state courts have expressly reserved their unfettered discretion to waive the rule. This circumstance argues against the conclusion that the courts apply the rule regularly and evenhandedly. *See Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 233–34, 90 S.Ct. 400, 402–03, 24 L.Ed.2d 386 (1969) (where state court had not applied its rule so consistently as to amount to self-denial of the power to entertain the federal claim if it wished to do so, federal court review not barred).

Turning specifically to New Mexico's treatment of claims of the type at issue here, we recognize that New Mexico did apply a waiver rule to such claims in some decisions handed down before the Supreme Court's decision in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See, e.g., State v. Rodriguez,* 83 N.M. 180, 489 P.2d 1178 (1971); *Raburn v. Nash,* 78 N.M. 385, 431 P.2d 874, 876, *cert. dismissed,* 389 U.S. 999, 88 S.Ct. 582, 19

L.Ed.2d 613 (1967); *State v. Ford,* 81 N.M. 556, 469 P.2d 535, 537 (Ct.App.1970); *Patterson v. State,* 81 N.M. 210, 465 P.2d 93 (Ct.App.1970). These early cases all apply the demand-waiver doctrine. In *Barker,* the Supreme Court rejected "the rule that a defendant who fails to demand a speedy trial forever waives his right." 407 U.S. at 528, 92 S.Ct. at 2191. Instead, the court held that "the defendant's assertion of or failure to assert his right to a speedy trial is *one of the factors* to be considered in an inquiry into the deprivation of the right." *Id.* (emphasis added). Significantly, even when New Mexico followed the demand-waiver approach, the courts sometimes did consider speedy trial claims on the merits despite the lack of a proper demand. *See Dalrymple v. State,* 78 N.M. 368, 431 P.2d 746 (1967); *State v. Baca,* 82 N.M. 144, 477 P.2d 320 (Ct.App.1970).

The Court in *Barker* identified four factors to be considered in determining whether a defendant's speedy trial right had been denied: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. Although the New Mexico courts have continued to state after *Barker* that a defendant may waive his right to a speedy trial by failing to assert the claim properly below, those courts have nonetheless frequently considered the merits of the claim.[2]

In *State v. Mendoza,* 108 N.M. 446, 774 P.2d 440 (1989), the state supreme court pointed out that the defendant's attempt to preserve his speedy trial rights in the trial court was untimely, but then stated that this fact did "not end [its] inquiry." *Id.,* 774 P.2d at 443. The defendant in *Mendoza* made two attempts to protect his speedy trial rights. First, he asserted them at a competency hearing held Nov. 17, 1987, one year after he was charged, released on bond, arraigned, and had entered a plea of not guilty. Second, he filed a motion on the day scheduled for trial. The New Mex-

---

**2.** In *State v. Bishop,* 108 N.M. 105, 766 P.2d 1339 (Ct.App.1988), the court did not address a defendant's default of the issue on appeal by failing to raise it properly in the trial court. Rather, the court's discussion in that case was directed to the defendant's knowing and voluntary waiver of the right in the trial court by the defendant's express agreement that a certain period of time was to be deducted from the state-imposed speedy trial time limits.

ico Supreme Court clearly stated that the November attempt was untimely. *See id.* ("Moreover, defense counsel's reservation of his client's rights when the suspension of the proceedings was lifted in November 1987 must be evaluated in light of its untimeliness...."). The obvious inference from this statement is that the subsequent motion on the day of trial was also untimely. Nonetheless, the court went on to analyze the claim on its merits under the four factors set out in *Barker*. In so doing, the court did not hold that the untimeliness resulted in a procedural default or invoke its bar rule as an alternative basis for its decision.

In *State v. Gallegos*, 109 N.M. 55, 781 P.2d 783 (Ct.App.1989), although the defendant filed a speedy trial motion in the district court, the court of appeals did not indicate whether the motion was timely. However, in reviewing the speedy trial claim on the merits, the court held that the defendant's assertion of preindictment delay was inconsistent with waiting six months after indictment to bring the matter to the court's attention. The court did not refer to procedural default, and weighed the delay under *Barker* as a factor in considering the merits of the claim. *Id.*, 781 P.2d at 791.

In *State v. Urban*, 108 N.M. 744, 779 P.2d 121 (Ct.App.), *cert. denied*, 108 N.M. 713, 778 P.2d 911 (1989), the court was presented with an alleged denial of due process arising from preindictment delay which the defendant had failed to develop properly below. Although the court there held that the defendant's motion asserting preindictment delay was timely, the court also held that the motion was nevertheless deficient because it was not accompanied by the required offer of proof of prejudice. The court viewed the necessary proffer as a requirement equivalent to timeliness and stated that the lack of such a requirement may result in waiver. *Id.* 779 P.2d at 125. The court pointed out that constitutional rights can be waived by the failure to assert them in a timely manner, but then performed fundamental error analysis and, upon considering the merits, found no prejudice resulting from the delay sufficient to constitute a denial of due process.[3]

In sum, the New Mexico courts clearly have not applied their procedural bar rule strictly and regularly to claims of speedy trial violations and preindictment delay. Indeed, it may well be that after *Mendoza*, New Mexico will always apply a *Barker v. Wingo* constitutional analysis when the state speedy trial six-month limitation is passed. In *Mendoza*, the court specifically stated that the untimeliness of the assertion of speedy trial rights "does not end our inquiry. *Whenever* there is a delay of more than six months between the time of arraignment and the date of the trial, [the *Barker*] factors *are to be considered* in determining whether a defendant has been denied the right to a speedy trial." 774 P.2d at 443 (emphasis added). It is certainly possible to read *Mendoza* as creating an exception to the New Mexico fundamental-error rule in speedy trial cases, mandating a constitutional assessment when the state statute is violated. If this is in fact the case, federal habeas review is available because application of the state's procedural bar, involving as it does a required assessment of federal constitutional error on the merits, is not independent.

Accordingly, we conclude that New Mexico's invocation of its procedural bar rule in this case, to the extent it did so, does not preclude federal habeas review. As discussed above, the rule is not adequate because the state courts do not apply the rule consistently to these claims. Moreover, the rule may well no longer be independent as to these claims in view of New Mexico's treatment of them in *Mendoza*. Although the federal district court therefore erred in holding federal review of the delay claims themselves unavailable, we need not re-

**3.** Although these cases were all decided after the New Mexico Supreme Court's decision at issue here, we note that the Supreme Court has considered decisions issued before, after, and contemporaneously with the state court decision under review. *See Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 1217 n. 6 (majority opinion) & 1220–22, 103 L.Ed.2d 435 (Blackmun, J., dissenting) (1989).

mand because that court did in fact reach the merits of those claims in addressing whether Gutierrez had established cause for his procedural default within the meaning of *Wainwright v. Sykes.* Gutierrez argued below as cause for his default that his trial counsel was constitutionally inadequate in failing to properly raise the issue in state court. As the district court recognized, this claim requires consideration of the merits of the delay claims. We can thus address both the delay claims themselves and the adequacy of counsel claim raised on appeal by reviewing the district court's resolution below of Gutierrez assertion of incompetent counsel.

## IV.

■ Gutierrez contends that he received ineffective assistance of counsel when his attorney failed to properly assert preindictment and pretrial delay in state court. To establish ineffective counsel, Gutierrez must show both that his attorney's performance was deficient and that these deficiencies were prejudicial to his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). It is obvious that if the delay claims that the attorney did not raise are without merit, Gutierrez suffered no prejudice by his counsel's failure.

### A.

■ Preindictment delay rises to a constitutional violation when the defense is substantially prejudiced by the delay and the reasons for the prosecutor's delay are improper. *See Martinez v. Romero,* 661 F.2d 143, 144 (10th Cir.1981) (per curiam). We agree with the district court that the preindictment delay claim must fail because Gutierrez has not alleged any facts to establish a causal link between his counsel's failure and the required prejudice to his defense. The only prejudice asserted by Gutierrez arising from the delay in this case is related to the disappearance of Alvarez and Maestas. The record contains no evidence tending to show that the unavailability of these witnesses was due to the delay; indeed, Gutierrez has failed or re-

fused to provide the names of people who might establish when Maestas disappeared. Absent any evidence establishing the point at which these witnesses became unavailable, Gutierrez has not shown that the witnesses would have appeared to testify at trial absent the excessive delay. Moreover, as discussed in Part II, *supra,* we have concluded that Gutierrez was not denied a fair trial by their unavailability. Under these circumstances, Gutierrez has not shown the prejudice required to establish unconstitutional preindictment delay.

### B.

■ In assessing whether pretrial delay has deprived a defendant of his constitutional right to a speedy trial, a court must balance four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192; *United States v. Jenkins,* 701 F.2d 850, 856–57 (10th Cir. 1983). Prejudice to a defendant in the speedy trial context may arise from oppressive pretrial incarceration, a defendant's anxiety and concern, and impairment of the defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Jenkins,* 701 F.2d at 857. Here, as with his preindictment delay claim, Gutierrez has alleged only that his defense was impaired by the disappearance of Alvarez and Maestas. We have already concluded that Gutierrez has failed to establish that the unavailability of these witnesses was caused by the delay or that his right to a fair trial was denied by their absence. Accordingly, we must balance this lack of actual prejudice against the other relevant factors in assessing whether Gutierrez was denied his right to a speedy trial.

■ The lower court found that while the twelve month delay from indictment to trial, some of which was admittedly attributable to defendant, was sufficiently lengthy to trigger speedy trial analysis, the length was not itself exceptional. The court noted that if overcrowded dockets had caused the delay, it weighed against the State, but held that this factor nonetheless provided little support for the

speedy trial claim. Finally, the court held that Gutierrez' failure to assert his right between indictment and arrest did not undermine his claim because he did not know of the charges until he was arrested. However, the court further held that counsel's failure to assert the claim between arrest and trial should be considered an exercise of reasonable professional judgment given the deficiencies in the claim. Upon balancing the *Barker* factors, the court concluded that Gutierrez had not established denial of his right to a speedy trial. We are persuaded by this analysis. The length of delay was not inordinate, the reason for the delay weighed only slightly against the State, Gutierrez' assertion of his right weighed slightly in his favor at most, and he has failed to establish any prejudice arising from the delay. Under these circumstances, Gutierrez has not made out a claim for unconstitutional pretrial delay. *Accord Jenkins*, 701 F.2d at 857–58.

Because we conclude that Gutierrez' preindictment and pretrial delay claims are without merit, we likewise conclude that he has failed to show the prejudice necessary to establish ineffective assistance of counsel.

## V.

 Finally, we address Gutierrez' claim that a life sentence for distributing a "miniscule" amount of heroin is cruel and unusual punishment. The Eighth Amendment prohibits "sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). In this case, Gutierrez' sentence was the result not only of a single sale of a small amount of heroin, but of his status as a repeat drug offender. Recidivism is a factor justifying a sentence that considers not only a person's "most recent offense but also ... the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Rummel v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133, 1145, 63 L.Ed.2d 382 (1980). Moreover, we point out that the

life sentence challenged here resulted in approximately seven years of actual imprisonment. The availability of parole is relevant to determining whether the length of a sentence violates the Eighth Amendment. *See Solem*, 463 U.S. at 297, 103 S.Ct. at 3013. Accordingly, we conclude that Gutierrez' sentence does not constitute cruel and unusual punishment.

The judgment of the district court is AFFIRMED.

STEPHEN H. ANDERSON, Circuit Judge, concurring in part and dissenting in part:

I concur in part II of the majority opinion, and in the result. However, I respectfully dissent with respect to the process by which the majority reaches that result. Procedural bar precludes consideration of Gutierrez's speedy trial claim.

When the last state court of review clearly holds that a federal constitutional issue has been forfeited due to a violation of state procedural rules, and the finding rests on adequate and independent state law grounds, then such a finding of procedural default bars federal habeas review of the federal claim. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Shafer v. Stratton*, 906 F.2d 506, 509–10 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 393, 112 L.Ed.2d 402 (1990). The majority opinion recognizes this rule, but holds that the New Mexico procedural bar rule as applied to speedy trial claims does not rest on adequate state grounds because it is not regularly followed. *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). This is a narrow holding, despite stray and nonbinding dicta in the majority opinion regarding the independence of the state ground, and whether the state court clearly invoked procedural bar (which it manifestly did).

Many New Mexico cases, in a variety of different contexts, recite and apply the general rule that "[o]n appeal, a reviewing court will not consider issues not raised in the trial court." *State v. Muise*, 103 N.M. 382, 707 P.2d 1192, 1196 (Ct.App.1985); *see*

*State v. Elliott*, 89 N.M. 756, 557 P.2d 1105, 1107 (1977); *State v. Bidegain*, 88 N.M. 466, 541 P.2d 971, 976 (1975); *State v. Aull*, 78 N.M. 607, 435 P.2d 437 (1967), *cert. denied*, 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668 (1968); *State v. Lucero*, 104 N.M. 587, 725 P.2d 266, 269–70 (Ct.App. 1986); *State v. Edgington*, 99 N.M. 715, 663 P.2d 374, 377 (Ct.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645, *cert. denied*, 464 U.S. 940, 104 S.Ct. 354, 78 L.Ed.2d 318 (1983); *State v. Bolen*, 88 N.M. 647, 545 P.2d 1025, 1026 (Ct.App.), *cert. denied*, 89 N.M. 5, 546 P.2d 70 (1976); *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135, 139 (Ct.App. 1974); *State v. Baca*, 81 N.M. 686, 472 P.2d 651, 651 (Ct.App.), *cert. denied*, 81 N.M. 721, 472 P.2d 984 (1970); *see also* New Mexico Supreme Court Rules of Appellate Procedure ("SCRA") 12–216 (1986). The New Mexico courts have stated repeatedly that constitutional rights, including the right to a speedy trial, can be waived. *See, e.g., State v. Mendoza*, 108 N.M. 446, 774 P.2d 440, 442 (1989); *Raburn v. Nash*, 78 N.M. 385, 431 P.2d 874, 876 (Ct.App.), *petition dismissed*, 389 U.S. 999, 88 S.Ct. 582, 19 L.Ed.2d 613 (1967); *State v. Urban*, 108 N.M. 744, 779 P.2d 121, 125 (Ct.App.1989); *State v. Bishop*, 108 N.M. 105, 766 P.2d 1339, 1342–43 (Ct.App.1988); *State v. Baird*, 90 N.M. 678, 568 P.2d 204, 205 (Ct.App.), *aff'd*, 90 N.M. 667, 568 P.2d 193 (1977).

The majority opinion relies on three cases for its conclusion that the New Mexico courts do not follow their own procedural bar rules where speedy trial claims are concerned: *State v. Mendoza*, 108 N.M. 446, 774 P.2d 440 (1989), *State v. Gallegos*, 109 N.M. 55, 781 P.2d 783 (Ct.App.1989), and *State v. Urban*, 108 N.M. 744, 779 P.2d 121 (Ct.App.), *cert. denied*, 108 N.M. 713, 778 P.2d 911 (1989). Those cases are easily distinguished from the situation involved here. *Mendoza, Gallegos,* and *Urban* each addressed circumstances in which speedy trial challenges were raised in the trial court. In the case before us the speedy trial issue was not raised at all in the trial court. Thus, the character of the default that was presented to the New Mexico Supreme Court was different.

In *Gallegos* and *Urban* there was no procedural bar because timely motions were made before the trial court. In *Gallegos* the court stated "we affirm the trial court's *denial of defendant's motion to dismiss* two of the counts for speedy trial violations." 781 P.2d at 787 (emphasis added). And, it went on to reemphasize the point, by stating: "[a]t the outset, we note that, although *defendant moved in the district court to dismiss all the counts for speedy trial violations,* he does not appeal the denial of his motion on the counts involving the *Sundance* case." *Id.* 781 P.2d at 789 (emphasis added). The appellate court then addressed the appeal from the denial of the motions to dismiss in the two cases to which the appeal applied.

In *Urban,* the court begins its discussion by stating that "[d]efendant appeals his conviction for shoplifting, contending that the trial court erred in *denying his motion to dismiss the indictment on sixth amendment speedy trial* and fourteenth amendment due process grounds." 779 P.2d at 122. Thereafter, the entire discussion in the court of appeals was whether or not the motion in the trial court was timely. The court concluded:

> [f]or all of these reasons, we conclude that Rule 5–601(C) lists several motions that must be raised before trial but need not be raised at arraignment or within twenty days thereafter. *See State v. Aragon* [99 N.M. 190, 656 P.2d 240 (Ct. App.1982)]. Defendant's motion was based on two objections, both of which were directed at the initiation of the prosecution. *Therefore, defendant's motion was timely.*

*Id.,* 779 P.2d at 123–24 (emphasis added).

*Mendoza* also involved a timely motion seeking dismissal for violation of the New Mexico statutory speedy trial time limits. There was no question in that case of procedural bar since the motion in the trial court was obviously timely and the appeal properly perfected. The majority opinion's strained attempt to reconstruct these cases in a way to achieve some equivalence with the type of case before us includes the necessity of building on an "inference" it

draws from *Mendoza.* *See supra* text following note 2.

The only recent case from New Mexico which has addressed the situation in which a speedy trial claim was not raised at all in the trial court, expressly holds that in such a circumstance the issue is procedurally barred. *State v. Valdez,* 109 N.M. 759, 790 P.2d 1040 (Ct.App.), *cert. denied,* 789 P.2d 1271 (1990).[1] In *Valdez,* the New Mexico Court of Appeals stated:

> Defendant also contends that he was denied his sixth amendment right to a speedy trial. Determination of whether a defendant has been denied his constitutional right to a speedy trial requires weighing four factors: length of the delay, reason for the delay, assertion of the right, and prejudice to the defendant. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Zurla v. State,* 109 N.M. 640, 789 P.2d 588 (1990); *State v. Grissom,* 106 N.M. 555, 746 P.2d 661 (Ct.App.1987). *The principal stumbling block for defendant is his failure to raise his constitutional claim in the district court.* In the portion of defendant's brief-in-chief that addresses the constitutional claim, defendant states, "Mr. Valdez asserted his right in a motion before trial," and cites to the taped transcript for the day of trial. The state's answer brief points out, however, that defendant's trial counsel never claimed violation of a constitutional right and never argued the four factors set out in *Barker.* Defendant's reply brief does not address the constitutional claim. Our review of the transcript shows that trial counsel discussed

only violation of this state's six-month rules.

Because defendant did not raise the constitutional claim until this appeal, there were no district court proceedings to develop fully the facts relating to the *Barker* factors, and the district court had no opportunity to weigh them. In a similar circumstance, a federal court of appeals wrote:

> Although defendants and their counsel are allowed considerable leeway in delaying their demand for a speedy trial before the trial court, *the issue must be raised at some point. A complete failure to raise it in the trial court, as was the case here, precludes our consideration of the issue on appeal,* for the simple reason that there is nothing to review. There is no decision of the district court weighing the factors considered and no record from which we could independently evaluate the government's conduct. [Citations and footnote omitted.]

*United States v. Canniff,* 521 F.2d 565, 573 (2d Cir.1975), *cert. denied sub nom., Benigno v. United States,* 423 U.S. 1059 [96 S.Ct. 796, 46 L.Ed.2d 650] (1976).

. . . .

*In short, nothing in the record suggests such a striking violation of the constitutional right to a speedy trial that it would be appropriate to consider that issue for the first time on appeal. See* SCRA 1986, 12–216(B).

*Id.,* 790 P.2d at 1044 (emphasis added).[2]

The majority's electronmicroscope approach to dissecting the New Mexico cases

---

**1.** It does not matter that the court in *Valdez* went on to reject the speedy trial claim on the merits, for we view that disposition, in the context of the case, as clearly an alternative holding. A state court may make alternative holdings on the merits and on procedural bar:

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

*Harris v. Reed,* 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10 (emphasis in original).

**2.** It is entirely appropriate to focus on the single most recent case from a state appellate court since the state courts are to be expected to follow current teachings of the United States Supreme Court. *Meadows v. Legursky,* 904 F.2d 903 (4th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990), is an example of reliance on a single state court case to demonstrate regularity for "adequate" state ground purposes—a point about which the dissent in that case complains. *Id.* at 914.

is consistent only with the *dissenting* opinion approach in *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435, *reh'g denied*, 490 U.S. 1031, 109 S.Ct. 1770, 104 L.Ed.2d 205 (1989), and such recent cases as *Meadows v. Legursky*, 904 F.2d 903 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990). The majority opinions in those cases took a more supportive view of the state's applications of their procedural bar rules than the dissenting judges wanted to take.

In sum, the majority opinion is wrong on procedural bar for two reasons. First, it misinterprets and incorrectly analyzes and applies New Mexico case law. Second, it approaches its procedural bar analysis with an apparent set of presumptions which I find unacceptable: that the state courts are not faithful to their own rules, and are seemingly unaware of how to apply them; and, that we ought to strain to permit federal habeas review and avoid finding procedural bar on state grounds. In my view, the presumptions must be exactly the opposite. Rather than going out of the way to imagine fatal defects in state cases so as to deny state courts the privilege of applying their own procedural bar rules, I would accord a presumption of regularity to state court applications of state rules.[3]

Accordingly, for the reasons stated, I respectfully dissent to that part of the majority opinion referred to above.

---

**3.** Thus, for instance, in *Dugger v. Adams*, 489 U.S. 401, 410–12 n. 6, 109 S.Ct. 1211, 1217–18 n. 6, 103 L.Ed.2d 435 (1989), the Supreme Court brushed aside the fact that Florida courts may have not been perfectly antiseptic with respect to procedural default rules in cases raising *Caldwell* issues (*Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)).