663 P.2d 374

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Don EDGINGTON and Paula Edgington, Defendants-Appellees.**

**No. 5963.**

Court of Appeals of New Mexico.

March 15, 1983.

Certiorari Denied May 17, 1983.

Paul G. Bardacke, Atty. Gen., Marcia E. White, Dir. of Appeals Div., Santa Fe, for plaintiff-appellant.

Neil P. Mertz, Socorro, Winston Roberts-Hohl, Santa Fe, for defendants-appellees.

## OPINION

LOPEZ, Judge.

Don and Paula Edgington (defendants) were charged with violation of New Mexico's Compulsory School Attendance Law, pursuant to §§ 22–12–2, N.M.S.A.1978 and 22–12–7(D), N.M.S.A.1978 (1982 Cum.

Supp.). Following a conviction in Socorro County magistrate court, defendants appealed to the district court in Socorro County. The district court conducted an evidentiary hearing on defendants' motion to dismiss and held that § 22–1–2 I, N.M.S.A. 1978 (1981 Repl.Pamph.) violated the equal protection clauses of the United States and New Mexico constitutions. The State appeals. We reverse.

## FACTS

Defendants were charged with violation of the attendance law when public school officials became aware that defendants' two children, Jason 11 and Laura 9, were not enrolled in a public school. The children were being taught at home pursuant to courses made available through the Christian Liberty Academy, an organization headquartered in Illinois. Both defendants directed the home instruction, although Mrs. Edgington conducted most of the studies. Neither parent held a current teaching certificate, but Mrs. Edgington had at one time been certified. At the evidentiary hearing the district court used a bifurcated analysis, inquiring first whether defendants were providing a proper program of instruction, and second whether defendants could constitutionally be prevented from providing home instruction. On the first question the court found that defendants were providing a "supervised program of instruction" as contemplated by the definition of "school" provided in § 22–1–2 S, N.M.S.A.1978 (1981 Repl.Pamph.).

In resolution of the second question the court heard testimony concerning whether the "home instruction" exception to the definition of a "private school" was constitutional. The definition of a private school is set out in § 22–1–2 I and provides as follows:

> "private school" means a school offering programs of instruction not under the control, supervision or management of a local school board exclusive of home instruction offered by the parent, guardian or one having custody of the student.

After hearing evidence and arguments of counsel, the court dismissed the action with prejudice. The court's order to dismiss contained the following:

> That the classification contained in the definition of "private school" as defined by the Public School Code (§ 22–1–2(I), N.M.S.A.1978 Comp.), to-wit: "exclusive of home instruction offered by the parent, guardian or one having custody of the student", as this definition pertains to the Compulsory School Attendance Law (§§ 22–12–1 et seq., N.M.S.A.1978 Comp.), the provisions of which the Defendants are charged herein with having violated, is unreasonable, arbitrary, and does not rest upon some ground of difference having a fair and substantial relation to the objects of the Public School Code.

The State appeals from the order to dismiss, contending that the court erred in finding the home exclusion provision unconstitutional. The State argues that the sole issue on appeal is whether defendants' equal protection rights were violated by the exclusion of home instruction by parents, guardians or custodians of a child. Defendants do not think the issue is so narrow. Rather, in addition to an equal protection inquiry, defendants contend that this court must consider whether a parent's right to educate a child implicates privacy rights. Moreover, because defendants base their claim on religious grounds, they assert that the Compulsory School Attendance Law must be measured against rights granted in the Free Exercise clause of the First Amendment to the United States Constitution.

## SCOPE OF APPEAL

In light of the parties' claims set out above, we must first decide the required scope of inquiry in this cause. By agreement of the parties and the trial court, the court was to determine whether defendants offered a "program of instruction". If not, the attendance law had been violated and inquiry would end there. If a program of instruction had been offered, the court then was to determine whether the attendance law violated the equal protection clause under a formula testing whether the statute

had no rational relation to a legitimate state purpose. If so, the law was unconstitutional and the inquiry need go no further. Conversely, if the rational basis test was passed, the court was then to determine whether the attendance law impermissibly impinged defendants' rights to privacy and free exercise of religion. These rights are deemed fundamental and a statute infringing such rights must support a compelling state interest to be constitutional. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

■ The district court found the attendance law unconstitutional as against the equal protection clause. The fundamental rights issues regarding privacy and Free Exercise were not reached by the court, nor were those issues included in the docketing statement. Accordingly, those issues are not before us on appeal. *State v. Alderete,* 88 N.M. 619, 544 P.2d 1184 (Ct.App.1976); N.M.R.Crim.App. 205, N.M.S.A.1978. We limit our inquiry to whether the attendance law violated defendants' rights to equal protection.

■ As a final preliminary matter, defendants assert that because the State did not challenge the "findings" of the court, the State cannot now argue that defendants failed to provide a supervised program of instruction. *State v. Sandoval,* 98 N.M. 417, 649 P.2d 485 (Ct.App.1982). What defendants refer to as findings actually were facts supporting the court's order to dismiss. Nevertheless, the court's determination that defendants had established a supervised program of instruction was not raised in the docketing statement. Accordingly, that issue is not before this court. *State v. Alderete, supra.*

## EQUAL PROTECTION

The issue raised by the State is as follows:

Whether the exclusion of home instruction by a parent, guardian or custodian of a child from satisfying the requirements of the Compulsory School Attendance Law violates equal protection as guaranteed in the United States and New Mexico Constitutions.

■ The State contends that in application of equal protection principles the test is whether the attendance law is supported by a rational basis. Defendants argue that because their equal protection claim involves education of their children, privacy rights are involved and the strict scrutiny test must be used. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We cannot agree with defendants' position. In *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the United States Supreme Court thoroughly considered the importance of education and concluded that it was not a fundamental right. We are compelled to follow the Court's conclusion. Accordingly, our standard for reviewing the attendance law is whether it bears some rational relation to a legitimate state interest. *Garcia v. Albuquerque Public Schools Bd.,* 95 N.M. 391, 622 P.2d 699 (Ct.App.1980); *see also* Note, *Home Instruction: An Alternative to Institutional Education,* 18 J.Fam.L. 353 (1979); Note, *Home Education in America: Parental Rights Reasserted,* 49 UMKC L.Rev. 191 (1981); Stocklin-Enright, *The Constitutionality of Home Education: The Role of the Parent, The State and The Child,* 18 Willamette L.Rev. 563 (1982).

■ It is in the first instance a legislative question as to whether a classification is reasonable. *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977). Under the rational basis test a statute will not be set aside if any state of the facts may be reasonably conceived to justify it, and any redeeming value of the classification is sufficient to render the statute constitutional. *Id.; Torres v. Village of Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978). The policy reasons behind judicial reluctance to overturn statutes on other than grounds involving fundamental constitutional values involves separation of powers considerations whereby the judiciary defers to legislative determination as to whether a particular classification is rational. *See generally,* J. Tussman and J. tenBroek, *The*

*Equal Protection of the Laws,* 37 Calif.L. Rev. 341 (1949). Furthermore, to declare a statute unconstitutional under the rational basis test defendants must show that the classification serves no valid governmental interest, is unreasonable and arbitrary as to amount to mere caprice. *Aetna Finance Co. v. Gutierrez,* 96 N.M. 538, 632 P.2d 1176 (1981).

In the case at bar, the legislature's failure to compile legislative history leaves us guessing as to its purpose for distinguishing between parents, guardians and custodians as one group and all other persons as another group. This does not mean, however, that the statute must fall. Different classifications are permitted, *Aetna Finance v. Gutierrez, supra,* and we may glean the reason for those classifications from extrinsic sources. *Espanola Housing Authority v. Atencio, supra.*

We first note that the exclusionary provision of the attendance law was enacted as a legislative response to the decision in *Santa Fe Commun. Sch. v. New Mexico State Bd.,* 85 N.M. 783, 518 P.2d 272 (1974), which declared public control over private and parochial schools unconstitutional. Section 22–1–2 I was subsequently enacted, presumably with the legislative intent that private schools could thereby be created without external criticism of the quality of education being provided.

Decisions from other jurisdictions also provided us with rationale for upholding attendance laws. For example, in *State v. Will,* 99 Kan. 167, 160 P. 1025 (1916), the court enforced an attendance law to prevent home instruction from becoming a pretense used to avoid the consequence of a truancy law. In *State v. Riddle,* 285 S.E.2d 359 (W.Va.1981), the court reasoned that attendance laws forced children to relate to those outside their family, thereby avoiding the sequestration of children "on a rural homestead during all of their formative years to be released upon the world only after their opportunities to acquire basic skills have been foreclosed and their capacity to cope with modern society has been so undermined as to prohibit useful, happy or productive lives." *Id.* at 366. *See also Knox v. O'Brien,* 7 N.J.Super. 608, 72 A.2d 389 (1950) ("Cloister and shelter have its place, but not in the everyday give and take of life.")

In each of the circumstances delineated above the State has a legitimate interest to promote. And, as applied to the case at bar, the parent, guardian and custodian exclusion provision of the attendance law promotes those interests by removing the child from the immediate family for his or her education. By bringing children into contact with some person, other than those in the excluded group, those children are exposed to at least one other set of attitudes, values, morals, lifestyles and intellectual abilities. Therefore, we hold that the statutory classifications presented in the attendance law rationally relates to a legitimate state interest. The statute in question does not present an equal protection violation.

We have approached this decision with a sense of our grave responsibility to render judgment in accordance with the principles established for the governance of all three branches of our government. There should be no misunderstanding as to the function of this court, in such a case. It is sometimes said that this court assumes a power to overrule or control the actions of the peoples' representatives; this is a misconception. The United States Constitution is the supreme law of the land, ordained and established by the people. The people of New Mexico are committed through our State Constitution to follow the United States Constitution. We, as judges of this case, through the oaths we have taken are committed to uphold the New Mexico and United States Constitutions. All legislation must conform to the principles that both constitutions lay down. When an act of the New Mexico Legislature is appropriately challenged in the court as not conforming to the constitutional mandate or mandates, the Judicial Branch of our State Government has only one duty—to lay the article or articles of the constitution or constitutions which is or are invoked beside the statute or statutes which is or are chal-

720

lenged and to decide whether the latter conform with the former. All this court does, or can do, is to announce its considered judgment upon the question. The power we have, if such it may be called, is the power of judgment. This court neither approves nor condemns any legislative policy or enactments. Our delicate and difficult duty and office is to ascertain and declare whether the legislation challenged is in accordance with, or is in contravention of, the provisions of the New Mexico and/or United States Constitutions, and having done so, our duty ends.

The judgment of the trial court is reversed and the case is remanded with instructions to reinstate the charges against the defendants and to proceed in accordance with this opinion.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.