**Certiorari Denied, December 6, 2012, No. 33,871**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-016**

**Filing Date: September 19, 2012**

**Docket No. 31,164**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant,**

**v.**

**TARA VALDEZ,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Alex Chisholm
Albuquerque, NM

for Appellee

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**    The issue in this case is one of first impression: Does the language of NMSA 1978, Section 66-8-102(N) (2010), mandating installation of an ignition interlock on vehicles driven by persons convicted of driving while intoxicated (DWI), violate the Equal Protection Clause of the United States and New Mexico Constitutions as applied to DWI offenders

whose impairment is caused not by alcohol but by drugs?[1] We conclude that it does not, and we reverse.

## I.    BACKGROUND

**{2}**    Under New Mexico law, it is unlawful for a person to drive a vehicle if that person is under the influence of intoxicating liquor. *See* § 66-8-102(A). Similarly, it is unlawful for a person to drive a vehicle if that person is under the influence of any drug to a degree that renders the person incapable of safely driving a vehicle. *See* § 66-8-102(B). Section 66-8-102(C) sets out the per se standard for DWI convictions based on alcohol concentration, and Section 66-8-102(D) deals with aggravated DWI. The portion of the statute in question in this case, Section 66-8-102(N), applies to any offender convicted of any type of DWI, and requires that offender to

> obtain an ignition interlock license and have an ignition interlock device installed and operating on all motor vehicles driven by the offender, pursuant to rules adopted by the traffic safety bureau. Unless determined by the bureau to be indigent, the offender shall pay all costs associated with having an ignition interlock device installed on the appropriate motor vehicles. The offender shall operate only those vehicles equipped with ignition interlock devices for:
> > (1)    a period of one year, for a first offender;
> > (2)    a period of two years, for a second conviction pursuant to this section;
> > (3)    a period of three years, for a third conviction pursuant to this section; or
> > (4)    the remainder of the offender's life, for a fourth or subsequent conviction pursuant to this section.

An ignition interlock device is an electronic analyzer that measures breath-alcohol concentration and prevents a driver from starting and continuing to operate a vehicle if the driver's blood-alcohol content exceeds a specified limit. *See* 18.20.11.11 NMAC (01/01/03).

**{3}**    Here, the facts are not in dispute. Defendant was charged with a first-time offense after driving while intoxicated in Santa Fe County pursuant to Section 66-8-102(B). Results of a blood test showed the presence in her system of oxycodone, diazepam, and nordiazepam, but no alcohol. She entered into a conditional plea agreement wherein she pled guilty to the first-time DWI but reserved the right to appeal any order requiring her to install an ignition interlock device in her vehicle. In addition, she filed a motion to set aside

---

[1]While we acknowledge that alcohol is normally considered to be a drug, for the purposes of this Opinion we distinguish alcohol from other drugs whether they be prescription or illegal. Consequently, when we refer to "drugs" we do not include alcohol.

any requirement that she install an interlock device. The district court accepted the plea agreement and further granted Defendant's motion. Finding that "alcohol did not contribute to . . . Defendant's conviction," the court ruled that the ignition interlock requirement did not apply to her case because the interlock devices detect only alcohol, not drugs. The court concluded that "there is no rational basis" for requiring a person in Defendant's situation to comply with the statute, in violation of equal protection guarantees of the state and federal constitutions. The State appeals.

**{4}** Defendant urges affirmance, claiming that the interlock provision is over-inclusive in its classifications of drivers and under-inclusive in its remedies. The State argues for reversal. It contends that the district court wrongly decided that the ignition interlock law fails the rational basis test and argues that the court improperly concluded that the law is not rationally related to the goal of preventing driving while impaired. We look to the statute and subject it to the rational basis test as adopted by New Mexico courts.

## II.     DISCUSSION

### A.     Standard of Review, Scope of Review

**{5}** New Mexico's Constitution mirrors that of the United States in providing that "[n]o person shall be . . . denied equal protection of the laws." N.M. Const. art II, § 18; *see* U.S. Const. amend. XIV. We have previously articulated the standard of review in such a constitutional challenge and the approach to the three levels of scrutiny involved—strict, intermediate, and rational basis:

> In analyzing which level of scrutiny should apply in an equal protection challenge, a court should look at all three levels to determine which is most appropriate based on the facts of the particular case. The determination of which level of scrutiny is applicable under the Constitution is a purely legal question, and is reviewed de novo.

*Breen v. Carlsbad Mun. Sch.*, 2005-NMSC-028, ¶ 15, 138 N.M. 331, 120 P.3d 413.

**{6}** The extent of our scrutiny depends "on the nature of the interest and the degree to which it is infringed." *State v. Druktenis*, 2004-NMCA-032, ¶ 86, 135 N.M. 223, 86 P.3d 1050 (internal quotation marks and citation omitted). The highest level of review, strict scrutiny, is used if the liberty interest being impinged rises to the level of a fundamental right, most notably in the areas of race or ancestry. *Id.* ¶ 89. Intermediate scrutiny is appropriate for analyzing "legislative classifications infringing important but not fundamental rights, and involving sensitive but not suspect classes." *Id.* ¶ 97 (internal quotation marks and citation omitted). Intermediate scrutiny is limited to classes involving gender and illegitimacy. *Id.* ¶ 99.

**{7}** Both parties agree that, absent an important right or sensitive class, neither of the two

3

higher forms of scrutiny is applicable in this case and that rational basis is the appropriate level of scrutiny for assessing the constitutionality of the interlock requirement. Under rational basis scrutiny, the party challenging the constitutionality of the statute "must overcome a presumption of constitutionality" and "is required to show that the statute's classification is not rationally related to the legislative goal." *Id.* ¶ 16 (internal quotation marks and citations omitted). Under this level of scrutiny, the classification need only be rationally related to a legitimate governmental interest. *Id.* ¶ 102. Thus, we have endorsed the proposition, expressed by the United States Supreme Court, that the Fourteenth Amendment

> permits the [s]tates a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the [s]tate's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*Id.* ¶ 103 (quoting *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961)).

**{8}** The burden on those challenging the constitutionality of legislative enactments is therefore great. The United States Supreme Court has long abided by the "strong presumption of validity" of legislative classifications and has stated that "those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (internal quotation marks and citation omitted). We have similarly stated that "the party objecting to the legislative classification has the burden of demonstrating that the classification bears no rational relationship to a conceivable legislative purpose." *Druktenis*, 2004-NMCA-032, ¶ 104 (internal quotation marks and citation omitted). The challenging party "must demonstrate that the challenged legislation is clearly arbitrary and unreasonable, not just that it is possibly so." *Id.* (internal quotation marks and citation omitted). In sum, a defendant "must show that the classification serves no valid governmental interest, is unreasonable and arbitrary as to amount to mere caprice." *State v. Edgington*, 99 N.M. 715, 719, 663 P.2d 374, 378 (Ct. App. 1983).

**B.    The Purpose of the Statute**

**{9}** "The ultimate purpose of the DWI laws is to protect the health, safety, and welfare of the public by stopping people from driving under the influence of drugs and alcohol." *State v. Hernandez*, 2001-NMCA-057, ¶ 19, 130 N.M. 698, 30 P.3d 387; *see State v. Johnson*, 2001-NMSC-001, ¶ 6, 130 N.M. 6, 15 P.3d 1233 ("The purpose of our DWI legislation is to protect the health, safety, and welfare of the people of New Mexico."). And our courts have long acknowledged that the public interest in deterring DWI is compelling. *Johnson*, 2001-NMSC-001, ¶ 17.

4

**{10}** "[A] determination of what is reasonably necessary for the preservation of the public health, safety and welfare of the general public is a legislative function and should not be interfered with, save in a clear case of abuse." *Druktenis*, 2004-NMCA-032, ¶ 106 (internal quotation marks and citation omitted). "[T]he Legislature has broad discretion in determining necessary measures for the protection of the public." *Id*. ¶ 107. And a statute will be upheld "if any state of the facts may be reasonably conceived to justify it[.]" *Edgington*, 99 N.M. at 718, 663 P.2d at 377. In assessing the constitutionality of a statute, we accept that "any redeeming value of the classification is sufficient." *Española Hous. Auth. v. Atencio*, 90 N.M. 787, 789, 568 P.2d 1233, 1235 (1977). "[E]ven a single persuasive state interest may be sufficient to defeat a . . . claim that equal protection has been denied." *Marrujo v. N.M. State Highway Transp. Dep't*, 118 N.M. 753, 760, 887 P.2d 747, 754 (1994).

**{11}** In the case before us, we first look to the text of the DWI statute for guidance. The statute codifying the penalty of installation of an ignition interlock device is titled, in part, "Driving under the influence of intoxicating liquor or drugs[.]" Section 66-8-102. That title expresses the Legislature's intention of having the statute apply to drivers who are under the influence of either alcohol or drugs or both, making DWI one crime regardless of the cause. *See State v. House*, 2001-NMCA-011, ¶ 22, 130 N.M. 418, 25 P.3d 257 (relying on the title of the vehicular homicide statute to note that "the Legislature's concern in enacting the statute was death and injury caused by vehicle"). A conviction for DWI under any section of the statute requires the offender "to obtain an ignition interlock license and have an ignition interlock device installed and operating on all motor vehicles driven by the offender, pursuant to rules adopted by the traffic safety bureau." Section 66-8-102(N).

**{12}** The DWI statute is part of a broad legislative scheme, including the State's separate Ignition Interlock Licensing Act, which applies to those whose "privilege or driver's license has been revoked or denied." NMSA 1978, § 66-5-503(A) (2009). The statute defines "revoked" as applying to a person whose license or driving privilege has been terminated "for driving while under the influence of intoxicating liquor or drugs." NMSA 1978, § 66-5-502(D) (2007). The statute also defines "ignition interlock device" as "a device . . . that prevents the operation of a motor vehicle by an intoxicated or impaired person." Section 66-5-502(B). This companion statute does not differentiate between those who were convicted of driving under the influence of alcohol or drugs. When analyzing Section 66-8-102 along with other statutes, the legislative actions "should be harmonized and construed together when possible, in a way that facilitates achievement of their goals." *Johnson*, 2001-NMSC-001, ¶ 6. The goal of the Legislature was to criminalize DWI and to penalize it with mandatory installation of ignition interlock devices without regard to the underlying substance that led to the offender's impairment and conviction.

## C. Legislative Authority

**{13}** We next analyze the authority of the Legislature and its use of DWI laws to protect the health, safety, and welfare of the public. Over the years, the New Mexico Legislature

has modified and toughened New Mexico's DWI laws to combat a serious problem throughout the state. Our Supreme Court has noted that "gradual and consistent increases in punishment for repeated DWI violations and implementation of rehabilitation options have been adopted to counter the problem of DWI in New Mexico." *State v. Anaya*, 1997-NMSC-010, ¶ 17, 123 N.M. 14, 933 P.2d 223 (noting twelve amendments to the DWI laws between 1941 and 1993, each of which "has adopted a slightly higher degree of penalty, be it a mandatory jail term or court-ordered treatment for alcohol or drug abuse"). Our Legislature, we have stated, has "broad latitude in experimenting with possible solutions to problems of vital local concern." *Druktenis*, 2004-NMCA-032, ¶ 71 (internal quotation marks and citation omitted).

**{14}** Here, that concern revolves around violations of our DWI laws, in particular the goal of preventing offenders from getting behind the wheel and again driving in an impaired state. The ignition interlock requirement squarely addresses that concern by limiting the ability of a previous DWI offender from operating a vehicle while under the influence of alcohol. New Mexico has been a pioneer among states in combating DWI, and it was the first in the nation to mandate an ignition interlock device for first-time offenders. *See* Joseph Marutollo, Comment, *No Second Chances: Leandra's Law and Mandatory Alcohol Ignition Interlocks for First-Time Drunk Driving Offenders*, 30 Pace L. Rev. 1090, 1098 (2010). In the first few years after implementing that harsher restriction, recidivism among drunk drivers dropped about sixty-seven percent. *See Ignition Interlocks: Every State, for Every Convicted Drunk Driver*, Madd.org, http://www.madd.org/laws/law-overview/ Draft-Ignition_Interlocks_Overview.pdf (revised 2012).

**{15}** Defendant complains that the classifications chosen by the Legislature are over-inclusive because requiring installation of a device that detects only alcohol unfairly ensnares those convicted of driving under the influence of drugs for no apparent reason or benefit. But a degree of over-inclusiveness in the name of crime prevention is not fatal to a statute; a legislature's "resort to somewhat over[-]inclusive classifications is legitimate as a prophylactic device to insure the achievement of statutory ends." *Druktenis*, 2004-NMCA-032, ¶ 71 (internal quotation marks and citation omitted).

> We will not, as long as rational basis is the scrutiny slot through which we review statutes, look behind the Legislature's over-inclusive classification unless it rests on grounds wholly irrelevant to the achievement of the [s]tate's objective, and, as long as any state of facts reasonably may be conceived to justify it.

*Id.* ¶ 108 (internal quotation marks and citation omitted). Furthermore, "'[i]n rational basis scrutiny, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* ¶ 112 (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 314-15).

**{16}** The State offered such rational speculation in its response to Defendant's motion to

6

set aside the interlock requirement: "While the state may not have the ability or means with an interlock device to prevent a driver under the influence of only drugs from operating a motor vehicle, it can prevent that same class of people, who have already demonstrated driving habits that pose a danger to the public, is at least not under the influence of alcohol." We also note that it is far from nonsensical to suggest that the Legislature, in ratcheting up the penalties for the severe and increasing plague of DWI, concluded that those who have been convicted of driving under the influence of drugs may also be disposed toward driving under the influence of alcohol. As noted above, the Legislature imposed the penalty of installation of an ignition interlock for first-time offenders under the heading of "driving under the influence of intoxicating liquor or drugs." Furthermore, we do not expect exact precision when the Legislature imposes penalties to protect the public health, safety, and welfare. *See Dandridge v. Williams*, 397 U.S. 471, 485 (1970) ("The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." (internal quotation marks and citation omitted)). And while the Legislature certainly had the ability to narrow the requirement of ignition interlock devices to only those convicted of driving under the influence of alcohol, "[a]n inquiry into less restrictive alternatives . . . is not necessary when applying the minimal rational basis test for analyzing legislation." *Powell v. N.M. State Highway & Transp. Dep't*, 117 N.M. 415, 420, 872 P.2d 388, 393 (Ct. App. 1994); *see Craig v. Boren*, 429 U.S. 190, 222 (1976) ("Whether the same ends might have been better or more precisely served by a different approach is no part of the judicial inquiry under the traditional minimum rationality approach." (Rehnquist, J., dissenting)). "When employing the minimal scrutiny test, the courts . . . will uphold the statute if any state of facts reasonably can be conceived that will sustain the challenged classification." *Richardson v. Carnegie Library Rest., Inc.*, 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988), *overruled on other grounds by Trujillo v. City of Albuquerque*, 1998-NMSC-031, 125 N.M. 721, 965 P.2d 305.

**{17}** We cannot say that requiring ignition interlock devices for all DWI offenders, regardless of the type of substance that led to the conviction, amounts to an act of the Legislature that "is unreasonable and arbitrary as to amount to mere caprice." *Edgington*, 99 N.M. at 719, 663 P.2d at 378. Nor can we credibly argue that the penalty "serves no valid governmental interest." *Id.* We reaffirm the proposition that the Legislature is granted "broad discretion in determining necessary measures for the protection of the public." *Druktenis*, 2004-NMCA-032, ¶ 107. We detect no element of caprice in the historical approach taken by the Legislature in refining our DWI laws to protect the public from those operating vehicles while impaired irrespective of the cause of the impairment.

**{18}** Further, we observe that it is not illogical for the Legislature to have imagined a connection between the use of prescription drugs and the use of alcohol, especially among young adults. *See* Sean Esteban McCabe, James A. Cranford, & Carol J. Boyd, *The Relationship Between Past-Year Drinking Behaviors and Nonmedical Use of Prescription Drugs: Prevalence of Co-Occurrence in a National Sample*, 84 Drug and Alcohol Dependence 281, 282 (2006) (stating that "the drug most frequently used in combination with prescription drugs was alcohol" and noting that about one-third of emergency

7

department visits connected to oxycodone use also involved alcohol use). It has been reported that "[t]here is growing evidence documenting the association between alcohol use and [nonmedical use of prescription drugs]"; that "problem use of prescription drugs was significantly higher among daily alcohol drinkers"; and that college students who abuse prescription drugs are "over six times more likely to report frequent binge drinking and over five times more likely to drive after binge drinking" than college students who did not abuse prescription drugs. *Id*. at 285. *See also* Sean Esteban McCabe, James A. Cranford, Michele Morales, & Amy Young, *Simultaneous and Concurrent Polydrug Use of Alcohol and Prescription Drugs: Prevalence, Correlates, and Consequences*, J. Stud. Alcohol 529, 529 (July 2006) (finding a 12.1 percent occurrence of simultaneous use of alcohol and prescription drugs among young adults and urging substance abuse prevention efforts at the college level that clearly focus on co-ingestion of alcohol and prescription drugs). We therefore conclude that a rational basis exists for the Legislature to require the installation of alcohol-detecting ignition interlocks on the vehicles of all first-time DWI offenders, even those whose offense involved only drugs and not alcohol.

## D.     Defendant's Additional Issues

**{19}**     Defendant raises two side issues that we address briefly. She relies on NMSA 1978, Section 66-8-102.1 (2003), which limits plea agreements, and contends that the second half of the statute refers only to blood-alcohol content and thus she "could have negotiated a plea agreement outside the scope of the interlock statute." We disagree. Section 66-8-102.1 states that "[w]here the complaint or information alleges a violation of Section 66-8-102 . . . , any plea of guilty thereafter entered in satisfaction of the charges shall include at least a plea of guilty to the violation of one of the subsections of Section 66-8-102." As noted above, all violations of the DWI statute require installation of the ignition interlock, even for first-time offenders, regardless of the cause of impairment. *See* § 66-8-102(N).

**{20}**     Next, Defendant asks us to distinguish between offenders who were under the influence of illegal drugs and those who were under the influence of legal prescription drugs. Defendant asks us to take judicial notice of statistics showing that 48 percent of all people take prescription drugs, suggesting that it is folly to think that the Legislature intended to both criminalize the behavior of nearly half the population of New Mexico and then try to punish them by mandating installation of a pointless device. We are unpersuaded. The theory of judicial notice is a way for a court to accept facts "not subject to reasonable dispute" and can be accurately and readily determined from "sources whose accuracy cannot reasonably be questioned." Rule 11-201(B)(2) NMRA. Judicial notice is reserved for obvious facts, universally accepted as true. *See, e.g.*, *City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 9, 147 N.M. 693, 228 P.3d 477 (taking judicial notice of a municipal ordinance); *State v. Yanez*, 89 N.M. 397, 398, 553 P.2d 252, 253 (Ct. App. 1976) (taking judicial notice of the fact that morphine is an opium derivative). While we decline to take judicial notice of these statistics, Defendant may make the argument to the extent that it is based on recognized authority.

**{21}** Regardless, Defendant's argument is flawed. The DWI statute does not punish people for merely taking prescription drugs; it outlaws only those who are under the influence of any drug taken "to a degree that renders the person incapable of safely driving a vehicle." Section 66-8-102(B). The level of impairment is what is at issue, and the difference between legal drugs and illegal drugs does not bear on the extent to which a drug may impair a driver. *See* Tina Wescott Cafaro, *Slipping Through the Cracks: Why Can't We Stop Drugged Driving?*, 32 W. New Eng. L. Rev. 33, 56 (2010) (noting that "[i]mpairment from licit drugs can parallel the symptoms of illicit drugs"). In sum, the Legislature is outlawing impaired driving in and of itself, not the method by which one becomes impaired. And here, Defendant was not merely ingesting prescription drugs under a doctor's care; she was operating a vehicle while impaired by those drugs.

## III. CONCLUSION

**{22}** When we apply rational basis scrutiny to the State's ignition interlock mandate, we conclude that the district court erred in finding that the requirement violated equal protection when applied to a defendant who had only drugs and no alcohol in her system at the time of the offense. For the foregoing reasons, we reverse the ruling of the district court and remand for further proceedings consistent with this Opinion.

**{23}** **IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**

**Topic Index for *State v. Valdez*, No. 31,164**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Equal Protection
New Mexico Constitution, General
Vague or Overbroad

**CRIMINAL LAW**

Driving While Intoxicated