This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                            **No. 33,627**

**DESEREE GONZALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres , District Judge**

Hector H. Balderas, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

{1}      We hold that under *State v. Torres*, 1999-NMSC-010, 127 N.M. 20, 976 P.2d 20, and *State v. Aleman*, 2008-NMCA-137, 145 N.M. 79, 194 P.3d 110, the admission of a police officer's testimony as a lay opinion concerning Defendant's being under the influence of marijuana was inadmissible, and reliance upon it by the metropolitan court was error. Conviction for driving under the influence of a drug (marijuana) under NMSA 1978, Section 66-8-102(B) (2010), requires proof beyond a reasonable doubt that the drug rendered Defendant incapable of safe driving at the time she drove. In the absence of competent evidence supporting the officer's uncorroborated hunch of a connection between marijuana and any effect on Defendant's capacity to drive being presented to the court, and in the absence of evidence of the influence of any other drug, including alcohol, Defendant's conviction is not supported by substantial evidence. We therefore reverse her conviction for driving under the influence of a drug and order the dismissal of the DUI-drug conviction. Defendant's other offenses are not part of this appeal.

**I.      Jurisdiction**

{2}      The State's assertion that Defendant exhausted her right to appeal when she appealed to the district court has already been decided in *State v. Carroll*, 2015-NMCA-033, 346 P.3d 372, *cert. granted*, 2015-NMCERT-001, 350 P.3d 92, which concluded that this Court has jurisdiction to hear on-record appeals from the

2

metropolitan court through the district court. The State concedes this, and we consider the issue no further.

**II.     Background**

**A.     The Stop**

{3}     Defendant was observed traveling at least ninety-five miles per hour in a sixty-mile-per-hour zone, drifting a few times between the left and middle lanes as Officer Curran pulled the vehicle over to the right shoulder. Officer Curran stopped the car and had the driver step out. There were passengers in the car, and Officer Curran smelled the odor of marijuana coming from it. Defendant "made some references to smoking marijuana earlier," to the officer without stating the exact time or amount. Defendant's eyes were bloodshot and watery, and Officer Curran smelled marijuana on Defendant's person. Officer Curran noted that Defendant was "scantily clad," meaning that all she was wearing a bustier, panties, and tights. He testified that although Defendant was friendly, cooperative, and appeared nervous, he found it strange she was not more "freaked out" or "uncomfortable" about her apparel.

**B.     Roadside Observations and Conclusions**

{4}     Defendant took the standard battery of field sobriety tests (SFSTs) that Officer Curran testified are used to determine if an officer has probable cause for arresting someone driving under the influence of alcohol or drugs. Defendant passed the

3

horizontal gaze nystagmus (HGN) test; she failed the others, mostly because of imperfect balance.

{5} Defendant repeatedly said that she was nervous during the SFSTs, and during the agility tests, she mentioned that her legs were shaking. Considering Defendant's driving, her performance on the SFSTs, her demeanor, and the odor of marijuana that existed both in the car and on Defendant's person, Officer Curran concluded that Defendant could not safely continue to drive the vehicle owing to the effects of marijuana and arrested her. Officer Curran testified that red eyes and body tremors were symptoms shared between marijuana and alcohol, but he did not administer a breath test for alcohol to Defendant. Although Officer Curran subjected Defendant to a blood test, no chemical test evidence was offered by the State because no witness from the State Laboratory Division (SLD) appeared to testify. The State proceeded solely with Officer Curran's testimony.

**C. Trial Court Proceedings**

{6} Officer Curran testified that he responded to Defendant's statement that her legs were shaking by telling Defendant that "body tremors is a sign" of marijuana use.[1] Defense counsel objected to the foundation for this testimony under *Aleman*. The State responded that Officer Curran is a trained "drug recognition expert" (DRE) and that

---

[1]Later phrased by the witness as "weed causes body tremors."

4

he was stating his lay opinion of what he saw and how that relates to a certain drug. The metropolitan court, apparently accepting the State's argument that the objection went to the weight of the testimony rather than its admissibility, then admitted Officer Curran's testimony about what he told Defendant.

{7}     Officer Curran cited throughout the trial to his extensive training as a DRE to state that body tremors were a sign of marijuana use. This training included class work and test evaluations. Officer Curran did not, however, administer a DRE examination in this case as he had been trained to do because "there was already a determination of what category [of drug Defendant] was under the influence of," and according to him, the goals of a DRE had therefore been satisfied, based on his assessment of her attire, driving, field sobriety performance, odor of marijuana, and admission to smoking it earlier. He testified that he "definitely felt that she would not be able to operate the vehicle safely" and "saw signs of impairment," which, along with Defendant's admission and the odor of marijuana, provided the justification for her arrest.

{8}     Officer Curran's determination played heavily in the State's closing arguments, because the State maintained that Officer Curran's experience and training as a DRE rendered the administration of a DRE examination superfluous, stating, "He knew what she was under the influence of, he didn't need to do a DRE, he knew she was

under the influence of marijuana." The State also pointed to his ability to recognize the smell of marijuana and testimony that shaking was a symptom of marijuana use. The State emphasized Defendant's "overall impairment" when performing the field sobriety tests. Finally, the State asserted that Defendant demonstrated her inability to drive safely by driving ninety-five miles per hour in a sixty-mile-per-hour zone. Defendant's closing focused on Officer Curran's failure to act in accordance with his DRE training and the lack of any chemical test as inadequate evidence to support a conviction under *Aleman*. He also raised the State's failure to provide any evidence connecting Officer Curran's observations of Defendant's driving or field test deficiencies to the effects of marijuana. The State's response to Defendant's contention was, "Judge, DRE is drug recognition. Officer Curran didn't need to do a DRE [evaluation]; he knew what . . . Defendant was under the influence of."

**D.    Procedural Posture**

{9}    The metropolitan court found Defendant guilty of speeding, careless driving, and driving while intoxicated. The court informed Defendant that, from "the officer's testimony that [Officer Curran]'s been around marijuana, he's smelled marijuana, and he didn't just smell it from the vehicle and all the other passengers, he smelled it from you when you were out of the vehicle." The court stated that based on the facts presented, it would never want Defendant "to get back behind the wheel of the car and

6

feel that you were not impaired by that marijuana." The court's commentary also included impressions of Defendant's driving, inattention, and speed. Defendant was found guilty of driving under the influence of drugs (marijuana).

{10} Defendant appealed the metropolitan court's decision to the district court, which affirmed in a memorandum opinion. The district court acknowledged that despite the State's attempted offer, Officer Curran's testimony regarding marijuana and its effects was not a lay opinion because it pertained not only to his observations, but also to his specialized knowledge. The district court disregarded this issue, however, based on Defendant's stipulation that Officer Curran was "an experienced officer" who has "extensive experience as a DRE." The district court held that there was sufficient evidence for a reasonable fact-finder to determine Defendant was under the influence of marijuana to a degree that rendered her incapable of safely driving a vehicle. Defendant appealed the district court's decision.

**III. Discussion**

{11} The crux of this case rests on the metropolitan court's reliance on Officer Curran's opinions to prove the required elements of the offense that a drug (marijuana) rendered the Defendant "incapable of safe driving." In the absence of any proof that Defendant actually had a drug in her body in an amount capable of impairing her driving, his testimony is the sole link between Defendant and the

7

determination that Defendant was under the influence of marijuana. Defendant asserts that Officer Curran's testimony to establish impairment of Defendant's driving by marijuana was improper lay testimony, that the State never attempted to qualify Officer Curran as an expert, and that even if it had, the effort would have failed. Thus, the metropolitan court should have suppressed the evidence. She also asserts that there is insufficient evidence to support her conviction. The State concedes that Officer Curran's testimony was not lay testimony, but argues on appeal that: Officer Curran's statements regarding muscle tremors were a recitation of his encounter with Defendant, not a statement of his opinion; defense counsel's objection to Officer Curran's lay testimony was "out of context"; and Defendant failed to adequately preserve the issue. The State argues on appeal that because the statement(s) regarding "tremors" were based on "the officer's extensive training and vast experience," the "opinion" Officer Curran rendered was in fact not an opinion, but a statement of "specialized knowledge," that would have been permissible under Rule 11-702 NMRA. This issue was not raised below, and we do not consider it. The State otherwise maintains that sufficient evidence supports the conviction.

**A.    The Issue of Admissibility Was Preserved**

{12}    Although noting the State's concession that Officer Curran's statement regarding his response to Defendant's comment on her shaking legs was not lay

8

testimony, we are not bound by it. *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, *cert. denied* 2015-NMCERT-004, 348 P.3d 695. Because of the intersection of Officer Curran's opinion with the sufficiency of the evidence in this case involving drug recognition expertise, we will continue with our analysis.

{13} Officer Curran's *first* mention of body tremors was in response to Defendant's statements that her legs were shaking; he informed Defendant that tremors were a symptom of marijuana use. Defendant immediately objected to Officer Curran's statement, claiming it created a correlation between tremors and marijuana use and that correlation was without foundation. The objection was more than adequate to elicit a response from the State: "Judge, I'll just note that the officer isn't testifying as an expert, but as a lay person." The metropolitan court ruled that Curran was "testifying as to how he knows as a DRE, how that relates to her condition on being under the influence of marijuana," and allowed Curran's testimony to proceed.

{14} Throughout the trial, the issue returned; the State continued to emphasize the quality of Officer Curran's "lay" opinion about Defendant being impaired by marijuana based on his DRE training and experience, even to the point of asserting that it was good enough to render superfluous his training in how to administer and interpret the DRE tests that Officer Curran did not administer in any event. Defendant continued her objections to Officer Curran's opinion in general and whether it was a

product of any permissible association with the officer's training and experience. It is obvious from the record that, even though the State initially abjured any connection of Officer Curran's testimony to expert testimony, the metropolitan court relied on Officer Curran's training and his knowledge that marijuana caused her condition of impairment when making its decision. Additionally, the district court noted in its memorandum opinion that "shaking legs" evidence was considered as part of its sufficiency review. From the moment the connection between tremors and marijuana was made and objected to, it is clear that the propriety of that testimony was preserved for appeal.

{15} The party opposing evidence must make a timely objection and state the specific ground for the objection unless it is contextually apparent. Rule 11-103(A)(1) NMRA; *Torres*, 1999-NMSC-010, ¶ 21; *Cf.* Rule 12-216 NMRA. Here, Defendant fairly and frequently interposed specific objections as to both the basis for admitting Officer Curran's opinion and its utility. We conclude that the admission of Officer Curran's testimony tying leg tremors to marijuana use was erroneous.

**B.     Officer Curran's Testimony Based on DRE Training or Experience Is Not Lay Opinion**

{16} Although we usually review a district court's evidentiary rulings for an abuse of discretion, *see State v. Duran*, 2015-NMCA-015, ¶ 11, 343 P.3d 207. When a court

10

bases an otherwise discretionary evidentiary ruling on a "misapprehension of the law," we review the issue de novo. *Id.* (internal quotation marks and citation omitted); *see also State v. Hughey*, 2007-NMSC-036, ¶ 9, 142 N.M. 83, 163 P.3d 470 ("[W]e review de novo the threshold question of whether the [lower] court applied the correct evidentiary rule or standard." (internal quotation marks and citation omitted)). This case demonstrates the latter situation. Lay testimony is "confined to matters which are within the common knowledge and experience of an average person." *Garcia v. Borden, Inc.*, 1993-NMCA-047, ¶ 10, 115 N.M. 486, 853 P.2d 737. A lay opinion is "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue[.]" Rule 11-701(A), (B) NMRA. It may not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 11-702." *See* Rule 11-701(C); *see also id.* comm. cmt. (stating that testimony based on scientific, technical, or specialized knowledge "must be analyzed under Rule 11-702 . . . for expert testimony"). "Training and experience are factors to be considered in evaluating expert testimony, not lay testimony." *Duran*, 2015-NMCA-015, ¶ 16. Here, the State only offered Officer Curran's opinion as lay opinion. It was not.

{17} Our courts accept that alcohol impairment produces physical manifestations that are capable of being discerned by lay persons and commonly understood. *See State v. Neal*, 2008-NMCA-008, ¶ 27, 143 N.M. 341, 176 P.3d 330; *see also State v. Baldwin*, 2001-NMCA-063, ¶ 16, 130 N.M. 705, 30 P.3d 394 (commenting that human experience can evaluate common symptoms of intoxication by alcohol and associate them with an impairment of driving ability). Assessing the influence of a particular drug, however, is beyond this capability. In *Aleman,* we expressed "doubt that a typical juror would have had the detailed information about the correlation between these [DRE-test] observations and a particular category of drug." 2008-NMCA-137, ¶ 19 (internal quotation marks and citation omitted).

{18} When the tests of physical manifestations of drug intoxication are based on scientific principles, the nature of expertise in administering them takes on a different character. *Torres* held that a police officer might testify as an expert, based on training and experience, to the administration of a scientifically-based sobriety test and his or her observation, but would be unable to testify as to the connection between HGN and how it relates to the influence of alcohol. 1999-NMSC-010, ¶¶ 48-50. *Aleman* followed *Torres* to hold that DRE testimony was "more than lay opinion testimony under Rule 11-701, but it is also less than scientific testimony under Rule 11-702."

*Aleman*, 2008-NMCA-137, ¶ 18. In order to be readily understandable to the fact-finder, testimony about the basis for body tremors requires a physiological and pharmacological foundation. *Aleman*, 2008-NMCA-137, ¶¶ 6, 11 (stating that drug identification based on scientific knowledge is not self-explanatory). To the extent that the metropolitan court judge admitted Officer Curran's testimony as lay opinion during the trial based on "how he knows things" as a DRE and despite Defendant's objection, the testimony of Officer Curran fell beyond the realm of lay opinion testimony. The fact that Officer Curran's testimony went beyond the initial salvo of objections to emphasize the quality of his specialized knowledge, experience, and training to validate a number of his opinions, clearly demonstrates those statements should not have been substantively considered by the metropolitan court at all, as lay testimony or otherwise. *See Torres*, 1999-NMSC-010, ¶ 40; *Aleman*, 2008-NMCA-137, ¶ 18 (concluding that testimony about administration and results of DRE examination "relate to other specialized knowledge[,]" not its scientific basis). Officer Curran's testimony was not lay opinion testimony because he specifically based his opinion on his training and experience as a DRE. This Court in *Aleman* concluded that such an opinion was not lay opinion when we expressed "doubt that a typical juror would have had the detailed information about the correlation between [the DRE's]

13

observations and a particular category of drug." 2008-NMCA-137, ¶ 19 (internal quotation marks and citation omitted). We established in *Aleman* that a DRE must be qualified as an expert in order to testify about his or her observations, as informed by DRE training. *Id.* ¶ 18 ("[T]he DRE's expert status is based on other specialized knowledge. . . . This sort of testimony is more than lay opinion testimony under Rule 11-701, but it is also less than scientific testimony under Rule 11-702." (internal quotation marks omitted)). This was not done in this case. The only proper basis for admitting Officer Curran's testimony was through qualifying him as an expert and laying an appropriate foundation for his opinion testimony. The State never offered Officer Curran as an expert witness, and it never attempted to qualify him as an expert by virtue of his DRE training and experience. Even if it had, the State would have been required to lay a foundation establishing Officer Curran's qualifications to testify about the scientific bases of the correlation between Defendant's leg tremors and marijuana use. *See Torres*, 1999-NMSC-010, ¶ 40 (explaining that the DRE "was not qualified to testify about the scientific bases of HGN testing" because "his testimony did not explain how the test proved intoxication"). Such a foundation would have had to satisfy the *Alberico-Daubert* factors. *Torres*, 1999-NMSC-010, ¶ 40 (stating that the DRE's inability to explain the scientific technique underlying the HGN test

14

constituted failure to satisfy the state's *Alberico-Daubert* burden). The State in the present case did not present any evidence suggesting either that Officer Curran had the requisite scientific expertise to connect leg tremors to marijuana use or that the connection satisfied the *Alberico-Daubert* burden. Consequently, the trial court had no basis at all on which to admit Officer Curran's opinion into evidence.

**C.      Admission of Officer Curran's Testimony Was Not Harmless Error**

{19}      Because we have concluded that the metropolitan court erred in admitting Officer Curran's opinion testimony, we must consider whether the error was harmless. "For purposes of harmless error review, violations of the rules of evidence are non-constitutional error." *State v. Armijo*, 2014-NMCA-013, ¶ 13, 316 P.3d 902, *cert. granted*, 2013-NMCERT-012, 321 P.3d 127. Such errors can therefore only be deemed harmless if "there is no reasonable probability the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (emphasis, internal quotation marks, and citation omitted). Our harmless error analysis is done on a case-by-case basis, and takes into consideration several factors such as the source of error, whether the error was cumulative or instead introduced new facts, the importance of the erroneously admitted evidence in the prosecution's case, the emphasis placed upon the error, and the evidence of the defendant's guilt separate from the error. *Id.* "The State

15

bears the burden to prove that the error was harmless." *Duran*, 2015-NMCA-015, ¶ 20.

{20}  In this case, the "source of the error," was the State's eliciting and over-emphasizing improper lay testimony. The testimony was not cumulative, because it was the only evidence linking marijuana use to leg tremors and the only evidence suggesting that Defendant's impairment, if any, was related to marijuana use. Here, Officer Curran's testimony improperly led the fact-finder to link his limited observations of Defendant's admitted marijuana use, which then supported the speculation that Defendant's marijuana use was the sole cause of the impairment of her driving abilities. We do not discount the evidence of Defendant's poor driving, failed field sobriety tests, and admission to consuming marijuana at an unspecified time. As the only causal link between marijuana use by Defendant and impairment; however, Officer Curran's testimony directly associating the drug to the impairment, was critical to the prosecution's case, and it was the only means of proving that Defendant was under the influence of marijuana. The State's improper emphasis on Officer Curran's training and experience culminated in its closing argument that asserted, "DRE is drug recognition. Officer Curran didn't need to do a DRE, he knew what Defendant was under the influence of." With this emphasis, the prosecution

cloaked Officer Curran's testimony with the appearance of scientific reliability and personal expertise, despite having initially insisted that he was not an expert, and emphasizing that the had not employed his DRE training. The metropolitan court was left with no more than grounds for speculation as to the cause of any impairment of Defendant's driving.

{21}     Such a course of action is fraught with the possibility of inducing harmful error. *State v. Marquez*, 2009-NMSC-055, ¶ 8, 147 N.M. 386, 223 P.3d 931, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6, presented a case in which an officer testified citing her training, experience, and "studies" conducted by the National Highway Traffic Safety Administration, to correlations between the physical cues observed during field sobriety tests and impairment levels. *Marquez*, 2009-NMSC-055, ¶ 8. Our Supreme Court regarded the opinion evidence impermissible, as it "correlated [the d]efendant's performance on the field sobriety tests with a . . . statistical probability of a [blood alcohol content] BAC at or above the legal limit." *Id.* ¶ 18. In *Marquez*, our Supreme Court pointed out the harm of the State's presenting inadmissible pseudo-scientific testimony to the jury "as the most accurate indicator of the defendant's intoxication." *Id.* ¶ 23 (alteration, internal quotation marks, and citation omitted). It stated that "the improper admission of scientific

17

evidence indicating that [the d]efendant was legally intoxicated at the time of driving will almost certainly tip the balance in favor of the State." *Id.* (omission, internal quotation marks, and citation omitted). The Court held that admission of the officer's testimony "distracted the [fact-finder] from its function of weighing the proper evidence of guilt and encouraged a departure from the legitimate elements of proof." *Id.* ¶ 24 (alterations, internal quotation marks, and citation omitted).

{22}    Ultimately, the evidence of Defendant's guilt was left to the fact-finder's speculation, which was fueled by Officer Curran's improper testimony. The metropolitan court stated, "I know by the officer's testimony that he's been around marijuana, he's smelled marijuana, and . . . he smelled it from you when you were out of the vehicle . . . . [B]ased off your admissions [and] what the officer testified he saw in the field sobriety tests, [I would not] want you to get back behind the wheel of the car and feel that you were not impaired by that marijuana." We conclude that there is a reasonable probability that the erroneous admission of Officer Curran's opinion affected the verdict in this case. Therefore, as in *Marquez*, the erroneous admission of the evidence constituted harmful error, and we reverse.

**D.    The Evidence Was Insufficient to Establish All Necessary Elements for a Conviction Under Section 66-8-102(B)**

18

{23}     Having determined that Officer Curran's testimony linking body tremors and SFST results to marijuana use was harmful error warranting reversal, we now consider the sufficiency of the evidence. We undertake this inquiry to ascertain whether retrial is permissible under double jeopardy principles. *See State v. Post*, 1989-NMCA-090, ¶¶ 22-24, 109 N.M. 177, 783 P.2d 487 (adopting *Lockhart v. Nelson*, 488 U.S. 33 (1988)). Where a trial court erroneously admits evidence that is subsequently excluded on appeal, "the appellate court must consider all the evidence admitted by the trial court when deciding whether there was sufficient evidence to support a conviction. If all of the evidence, including the wrongfully admitted evidence, is sufficient, then retrial following appeal is not barred." *Post*, 1989-NMCA-090, ¶ 22. When reviewing the sufficiency of the evidence presented to support a conviction, we first view the evidence in the light most favorable to the guilty verdict, and indulge all reasonable inferences in favor of the verdict. *State v. Schaaf*, 2013-NMCA-082, ¶ 11, 308 P.3d 160. We then determine whether "any rational trier of fact could have found the essential elements of crime beyond a reasonable doubt." *State v. Cofer*, 2011-NMCA-085, ¶ 20, 150 N.M. 483, 261 P.3d 1115 (internal quotation marks and citation omitted). The relevant inquiry on appeal is, therefore, whether the metropolitan court's "decision is supported by substantial evidence, not whether [it] could have

reached a different conclusion." *Schaaf*, 2013-NMCA-082, ¶ 11 (internal quotation marks and citation omitted). Substantial evidence is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). We look first to the elements of the statute, then to the evidence presented to the trial court, and determine whether each element was proven beyond a reasonable doubt.

{24}     To obtain a conviction of DWI drugs, the State must prove that a defendant: (1) operated a vehicle, (2) while under the influence of drugs, and (3) to such a degree that the defendant was incapable of safely driving a vehicle. UJI 14-4502 NMRA; *see* § 66-8-102(B). Under this subsection of the statute, "[t]he level of impairment is what is at issue[.]" *State v. Valdez*, 2013-NMCA-016, ¶ 21, 293 P.3d 909. The DWI drug subsection requires proof of a level of impairment caused by one or more drugs that is not required under DWI alcohol subsections. As applied to alcohol, "under the influence" means "less able to the slightest degree." *State v. Lewis*, 2008-NMCA-070, ¶ 27, 144 N.M. 156, 184 P.3d 1050 (internal quotation marks and citation omitted); *see* UJI 14-4501 NMRA (stating that being under the influence of alcohol is to be "less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person

and the public"). The DWI *drug* statute, however, specifically indicates that impairment must be "to a degree that renders the person incapable of safely driving a vehicle." Section 66-8-102(B). The State, while breaking the statute into the same elements as listed above, urges us to assign "under the influence" the same meaning under the DWI drug subsection as it is proscribed under the DWI alcohol subsection—namely, impairment to the "slightest degree." *State v. Dutchover*, 1973-NMCA-052, ¶ 5, 85 N.M. 72, 509 P.2d 264 (" 'Under the influence' means that to the slightest degree defendant was less able, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle an automobile with safety to himself and the public."). This view is incorrect.

{25}     The statute providing the framework for the decision in *Dutchover* has since been rewritten to create discrete subsections and elements for intoxication by alcohol and drugs. Section 66-8-102 now establishes different standards for each, defining a differing degree of intoxication necessary to establish a violation under each subsection. We are bound to apply "the plain meaning of the language employed" by the Legislature, *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 22, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks and citation omitted), and must construe Section 66-8-102 so that no part of it "is rendered surplusage or superfluous." *Katz v.*

21

*N.M. Dep't of Human Servs. Income Support Div.*, 1981-NMSC-012, ¶ 18, 95 N.M. 530, 624 P.2d 39. The third element of the offense under Section 66-8-102(B) requires that the influence of a drug renders a driver "incapable" of safe driving. By applying the State's interpretation of this standard by equating "under the influence" with "to the slightest degree," the State attempts to rewrite the term out of consideration and usurp the Legislature's language. *Dutchover*, 1973-NMCA-052, ¶ 5.

{26}     First we conclude that there is no evidence by way of scientific test, that Defendant had any drug in her system capable of producing the requisite degree of impairment. This is due to the State's twice failing to subpoena the SLD analyst to testify at trial. No testimony correlated any extent of use to any extent of relevant impairment. Hence, no evidence in this case demonstrates the actual presence of intoxicating marijuana in Defendant's system, as required by *Aleman*. The State contends that, although Officer Curran did not conduct all twelve steps of the DRE exam, he did not need to do so because "there was already a determination of what category [of drug Defendant] was under the influence of," and therefore, the goals of the DRE protocol had already been satisfied. We rejected this position earlier in this Opinion, and do so again here.

{27} SFSTs do not "measure driving impairment" by drugs. *State v. Lasworth*, 2002-NMCA-029, ¶ 15, 131 N.M. 739, 42 P.3d 844 (emphasis, internal quotation marks, and citation omitted). The State failed to establish a connection between the impairment observed in SFST's to any possible influence of marijuana. Odor alone is not a strong basis upon which to infer impairment. *State v. Caudillo*, 2003-NMCA-042, ¶ 10, 133 N.M. 468, 64 P.3d 495. There was no evidence as to when Defendant smoked marijuana, and there is no evidence that Defendant's statements regarding smoking marijuana referred to any period of time relevant to producing intoxication. Alcohol's effect on driving might be deduced from experience common to lay persons, but we have made it clear that determining the effects of drugs requires expert testimony. *Aleman*, 2008-NMCA-137, ¶¶ 18, 31. Here, we have no alcohol test, no drug test, and little more than Officer Curran's self-referenced opinion on which to base Defendant's conviction.

{28} Even giving deference to the metropolitan court's verdict, evidence outside Officer Curran's opinion alone cannot support Defendant's conviction. The connection between observed symptoms and a drug's presence and connection to a driver's capacity for safe operation are critical under Section 66-8-102(B). A DRE's opinion alone is insufficient to establish the necessary connection. Creating a

23

connection between a DRE's observations and proof of impairment requires the testimony of an expert toxicologist linking the DRE's observations with known effects of the drug that has been identified in the defendant's system and rendering an opinion as to whether those effects would sufficiently impair driving ability. *Aleman*, 2008-NMCA-137, ¶ 30. The connection between marijuana, bad driving, and the lack of capacity for safe driving required such an opinion; without it, the elements of the offense are not proven.

{29}     Viewing all the evidence in the light most favorable to the guilty verdict, and indulging all reasonable inferences in favor of the verdict, we cannot conclude that there was sufficient evidence to prove that defendant was "under the influence" of marijuana so as to render her incapable of safe driving. Even with Officer Curran's testimony, there is no evidence to prove that Defendant's speeding and weaving was the result of marijuana-induced impairment, as opposed to a nineteen-year-old's poor judgment. Not only was there no test of Defendant's blood in evidence to prove the presence, and therefore influence, of marijuana (or any other drug), there was no evidence as to any of its presence in an amount relevant to any effect marijuana had or could have had on Defendant's driving ability, or any person's driving ability in general. If the evidence presented "must be buttressed by surmise and conjecture,

24

rather than logical inference[,]" it will not be sufficient to support a conviction. *State v. Vigil*, 1975-NMSC-013, ¶ 12, 87 N.M. 345, 533 P.2d 578 (internal quotation marks and citation omitted). The evidence was therefore insufficient to prove the element of incapacity.

{30} Because the State is required to have proven all essential elements beyond a reasonable doubt to survive a claim of insufficient evidence, we conclude that there was insufficient evidence to support Defendant's conviction under Section 66-8-102(B), and reverse for dismissal of charges against Defendant.

{31} **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**I CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

**MICHAEL E. VIGIL, Chief Judge (dissenting).**

25

**VIGIL, Chief Judge (dissenting).**

{32}     I agree with the majority that Officer Curran's opinion that Defendant's shaking legs were caused by marijuana intoxication was inadmissible. However, as the majority opinion notes, the metropolitan court judge did not rely on this opinion in finding Defendant guilty. *See* Majority Op. ¶ 9*, see also State v. Gutierrez,* 1996-NMCA-001, ¶ 4, 121 N.M. 191, 909 P.2d 751 ("In a bench trial, the trial court is presumed to have disregarded improper evidence, and erroneous admission of evidence is not reversible error unless it appears the trial court must have relied on it in reaching its decision."(internal quotation marks and citation omitted)). I therefore conclude, unlike the majority, that admission of the evidence by the metropolitan court does not warrant reversal.

{33}     Secondly, I conclude that independent of Officer Curran's inadmissible opinion, the evidence set forth supports the guilty verdict of DWI while under the influence of marijuana. *See* Majority Op. ¶¶ 3-4. Specifically: (1) unsafe driving by speeding; (2) unsafe driving by drifting between the left and middle lanes; (3) the odor of marijuana coming from within the car when it was stopped; (4) the odor of marijuana on Defendant's person; (5) Defendant's admission to using marijuana "earlier"; (6) Defendants' bloodshot, watery eyes; (7) Defendant's failure on field sobriety tests due

to imperfect balance; and (8) Defendant's nervous demeanor, support an inference that Defendant was driving under the influence of marijuana to the extent that she was incapable of driving safely. *See State v. Sanchez*, 2001-NMCA-109, ¶ 16, 131 N.M. 355, 36 P.3d 446 (concluding that while the evidence was "marginal at best" it was sufficient to support an inference that the defendant's drinking actually affected his driving).

{34}    Since the majority disagrees on both points, I respectfully dissent.


_____
**MICHAEL E. VIGIL, Chief Judge**

27